(December 15, 1902.)

## STATE v. KELLER.

[70 Pac. 1051.]

CRIMINAL LAW — PROOF—CORPUS DELICTI — EXTRAJUDICIAL CONFESSIONS.—The fact that a crime has been committed cannot be proved by the extrajudicial confessions or statements of the prisoner alone; there must be introduced some evidence, or corroborating circumstances, tending to show that the crime has been committed, in addition to such confessions or statements. Slight corroborating facts are sufficient.

ABSENCE OF WRONGFUL INTENT.—Wicked or willful intent to violate the criminal law is not an essential ingredient in every criminal offense. And that is so in statutory offenses when the statute does not make the intent with which an act is done an ingredient of the crime. The rule is that in acts *mala in se* the intent governs, and in acts *mala prohibita*, the intent does not govern, and the only inquiry is, "Has the law been violated?"

JURISDICTION—ORDERS AND PROCESS—NO PROTECTION.—Orders or process issued by the court in a matter in which such court had no jurisdiction are void, and are no protection to a person who acts under them.

INFORMATION—CHARGING OFFENSE—WRONGFUL INTENT.—An information charging an offense substantially in the language of the statute is sufficient, and it is not necessary to aver criminal intent where the offense charged is a statutory one, and such intent is not made an ingredient of the crime.

(Syllabus by the court.)

APPEAL from District Court of Oneida County.

The facts are stated in the opinion.

Lindsay R. Rodgers and D. C. McDougall, for Appellant.

The errors upon which the appellant relies for a reversal of the judgment (to all of which it may be here stated, once for all, exceptions were duly taken at the trial), raise substantially three questions which this court is now called upon to decide: 1. Can a conviction be sustained when no proof of the *corpus*

*delicti* is given, the state relying solely and exclusively for a conviction upon evidence of an extrajudicial confession made by the defendant? 2. Did the lower court commit an error affecting the substantial rights of the defendant when it rejected his offer to prove that he brought the sheep in question into Idaho solely by reason of the writ of injunction and the inspection had in pursuance thereof by Lowe and McBerney, the inspectors appointed by the circuit court, who found the sheep free from disease? 3. Can the conviction be sustained when the information upon which it is based fails to allege that the offense was committed knowingly, willfully, unlawfully, or with any wrongful intent? No proof is given outside of the defendant's own extrajudicial confession, that a crime was ever in fact committed. No testimony was introduced to the effect that these sheep were seen in Box Elder county, Utah, between March 9, 1901, and April 11, 1901. No testimony was introduced to the effect that these sheep were seen entering the county of Oneida from the county of Box Elder. In the absence of such testimony, in the absence of any proof whatever of the *corpus delicti*, can the defendant's conviction be sustained, supported alone by evidence of his extrajudicial confession? That it cannot be sustained, the authorities will abundantly demonstrate. (*People v. Jones,* 31 Cal. 566; *People v. Thrall,* 50 Cal. 415; *People v. Simonsen,* 107 Cal. 345, 40 Pac. 440; *State v. Knowles,* 48 Iowa, 598; *People v. Lane,* 49 Mich. 340, 13 N. W. 622; *United States v. Boese,* 46 Fed. 917; *United States v. Mayfield,* 59 Fed. 118; *South v. People,* 98 Ill. 261; *Jenkins v. State,* 41 Miss. 582; *People v. Lambert,* 5 Mich. 349, 72 Am. Dec. 49; Wharton's Criminal Evidence, secs. 632, 633, and cases there cited.) The next question is whether the court erred when it rejected defendant's offer to prove that he brought the sheep into Idaho in reliance on the writ of injunction and the inspection had in pursuance thereof. This evidence was offered for the purpose of showing the absence of any wrong intent on the defendant's part. By the offer thus made he asked leave of the court to show to the jury that he acted innocently and honestly, that he had no intention of violating any law of

Idaho, that he acted in reliance on the judgment of a federal court which, in issuing the writ of injunction, necessarily found that the law of Idaho was nugatory and void. (*State v. Gardner,* 5 Nev. 377; *State v. Holmes,* 17 Mo. 379, 57 Am. Dec. 269, and note; *State v. Hollyway,* 41 Iowa, 200, 20 Am. Rep. 586; *State v. Macomber* 7 R. I. 349; *Commonwealth v. Bradford,* 9 Met. (Mass.) 268; *State v. Crosset,* 81 N. C. 579; *State v. Smith,* 18 N. H. 91; *Byrne v. State,* 12 Wis. 519.)

Frank Martin, attorney general, for Respondent.

As to there being no evidence to prove the *corpus delicti* except the extrajudicial confessions of the defendant: The defendant was arrested for violating the said proclamation, and it was charged "that he did drive or cause to be driven from the county of Box Elder, state of Utah, into the county of Oneida, state of Idaho, two thousand sheep, which sheep so driven had been held, ranged and herded in said Box Elder county, Utah, between the ninth day of March, 1901, and the eleventh day of April, 1901, etc." The date upon which he drove said sheep into the state of Idaho is alleged to be April 11, 1901. What was necessary for the state to prove in order to establish the *corpus delicti?* Merely that the defendant had driven or caused to be driven the sheep in question from Box Elder county, Utah, into Oneida county, Idaho. The *corpus delicti* may be proven by either direct or circumstantial evidence. (*State v. Williams,* 7 Jones (N. C.) 446, 78 Am. Dec. 248, note on pp. 253-259; *United States v. Williams,* 1 Cliff. 21, Fed. Cas. No. 16,707; *State v. Keeler* 28 Iowa, 551; *State v. Dickson,* 78 Mo. 438; *Carey v. State,* 26 Tenn. 499; *Brown v. State,* 1 Tex. App. 154.) Such is the offense prohibited by the statute in question which makes any person, after the publication of the governor's proclamation, receiving in charge any sheep from any of the prohibited districts and transporting, conveying or driving the same within the limits of any of the counties of the state of Idaho, guilty of a public offense. (Pen. Code, sec. 5063.) It will be seen that no evil intent is necessary in order to complete the offense provided in the above sec-

tion. "As to acts which are not *mala in se,* but *mala prohibita,* it is the duty of a person to take care that he obeys the statute or ordinance lest he be punished, for the penalty is imposed if the act is done ever so innocently." (*State v. Rechnitz,* 20 Mont. 488, 52 Pac. 265; *Leggatt v. Prideaux,* 16 Mont. 205, 50 Am. St. Rep. 498, 40 Pac. 377.) It is a mistaken notion that positive, willful intent to violate the criminal law is an essential ingredient in every criminal offense; and that where there is an absence of such intent there is no offense; especially so as to statutory offenses. (*Commonwealth v. Weiss,* 139 Pa. St. 251, 23 Am. St. Rep. 182, 21 Atl. 10; *State v. Gould,* 40 Iowa, 374; Wharton's Criminal Law, 9th ed., secs. 84, 88; *Fiedler v. Darrin,* 50 N. Y. 443; *Rex v. Ogden,* 6 Car. & P. 611; *People v. Monk,* 8 Utah, 35, 28 Pac. 1115.) Can the fact that a court without jurisdiction had issued an injunction to restrain the Idaho officials from preventing his bringing his sheep into the state, justify his act? It is a well-established principle of law that all orders, judgments, or other processes issued by a court in a matter in which the court was without jurisdiction, are void; and that such orders or other processes are no protection to a person who acts under them. (*Andrus v. Blazzard,* 23 Utah, 233, 63 Pac. 888, see p. 894; 17 Am. & Eng. Ency. of Law, 2d ed., 1046, 1057, and notes; 1 Am. & Eng. Ency. of Law, 2d ed., 751, and note; *State v. Goodenow,* 65 Me. 30; Wharton's Criminal Law, 9th ed., secs. 1704, 1725, 1726.) Appellant argues that the information does not state a public offense, for the reason that it fails to allege that the act charged therein was committed either willfully, unlawfully, knowingly or with any wrongful intent. It is a well-settled principle of law that an indictment charging an offense in the language of the statute is sufficient, and that is essentially true if the offense is a statutory one and one which does not require a criminal intent. (*People v. Russell,* 81 Cal. 617, 23 Pac. 418; *State v. McGaffin,* 36 Kan. 315, 13 Pac. 560; *State v. Ellington,* 4 Idaho, 529, 43 Pac. 60; *People v. Butler,* 1 Idaho, 231; *People v. Marseiler,* 70 Cal. 98, 11 Pac. 503; *United States v. Mays,* 1 Idaho, 763; *People v. Ah Woo.* 28 Cal. 211.)

SULLIVAN, J.—The appellant, who was the defendant in the trial court, was convicted on December 19, 1901, of the crime of driving about two thousand sheep from Box Elder county, state of Utah, into Oneida county, Idaho. The facts are substantially as follows: Under the quarantine laws of this state (see Laws 1899, p. 452) the governor of Idaho on March 19, 1901, issued a quarantine proclamation, the validity of which is not questioned here. The act under which said proclamation was issued was held to be not in contravention of section 8, article 1, or section 2, article 4, of the constitution of the United States, by this court, in *State v. Rasmussen,* 7 Idaho, 1, 97 Am. St. Rep. 234, 59 Pac. 933, 52 L. R. A. 78, which decision was affirmed by the supreme court of the United States. (*State v. Rasmussen,* 181 U. S. 198, 21 Sup. Ct. Rep. 594, 45 L. ed. 820.) In said proclamation it was declared that in certain localities (naming them), including Box Elder county, state of Utah, scab was epidemic among sheep, and prohibited sheep which had been held, herded, or ranged within or driven through said infected districts from being brought into this state for a period of forty days from the date of said proclamation. On June 17, 1901, an information was filed in the district court of Oneida county, charging the appellant with the crime of which he was convicted as above stated. The defendant was sentenced to pay a fine of $200. The appellant's motion for a new trial was denied, and this appeal is from the judgment and order denying a new trial.

It is contended by counsel for appellant that the state failed to prove the *corpus delicti;* that the body of the crime consisted in driving on April 11, 1901, a band of two thousand sheep, which between March 9, 1901, and April 12th, of that year, had been held, herded, or ranged in Box Elder county, state of Utah, from the latter county into Oneida county, state of Idaho. The state called as its first witness David H. Anderson, who testified: That he was acquainted with the defendant, and on the twelfth day of April, 1901, went from Samaria, Oneida county, this state, to Pocatello valley, with the defendant, to his sheep camp in said valley. The defendant had one band of sheep

there, containing about two thousand head. That they were feeding there and trailing north. That the defendant told witness that they had been camped there for two or three days; that he had wintered the sheep on the desert, and that he had brought them from the desert through Box Elder county, state of Utah, into this state, two or three days previous to the 12th of April; that it would have been impossible for the defendant to have driven his sheep in from the desert and gone to said Pocatello valley without having brought them through said Box Elder county. That said conversation occurred on April 12, 1901, and that the sheep referred to at that time were in Oneida county, state of Idaho. Thereupon the attorney general offered in evidence said proclamation of the governor, and the state rested. Thereupon counsel for defendant asked the court to instruct the jury to return a verdict for the defendant on the ground that the evidence was insufficient to show that the offense charged had been committed, and insufficient to show that the defendant had committed said crime, which motion was overruled by the court. We think the above evidence sufficiently corroborates the statement of the defendant that said sheep had been brought by him from Box Elder county, Utah, subsequent to the date of the governor's proclamation, and prior to the twelfth day of April, 1901. The witness saw the sheep in Oneida county. Defendant claimed to own them, and stated that he had wintered them on the desert, and had brought them through Box Elder county, Utah, into Idaho, two or three days prior to the 12th of that month. The court did not err in denying said motion.

That the state in criminal cases must prove the *corpus delicti* is not questioned, and it is a well-recognized rule that that may be proved by either direct or circumstantial evidence. It is also a well-recognized rule that the fact that a crime has been committed cannot be proved by the extrajudicial confessions or statements of the prisoner, and that there must be some evidence or corroborating circumstances tending to show that a crime has been committed, aside from such confessions or statements. (*People v. Jones,* 31 Cal. 566; Wharton's Criminal Evidence,

9th ed., secs. 632, 633.)   In *People v. Badgley,* 16 Wend. 53, it is said: "Full proof of the body of the crime—the *corpus delicti* —independently of the confessions, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient."

Jesse M. Smith was then called and testified as a witness on behalf of the defendant. He testified that he saw the said band of sheep in Box Elder county, state of Utah, on the fourth day of April, 1901, and that a Dr. McBerney and a Mr. Lowe there made an examination of said sheep and made a certain certificate of their examination thereof, which certificate was thereupon offered in evidence, and rejected on an objection by counsel for the state. The witness further testified that said sheep were the property of one L. Parker, who, with many others, including witness, had prior thereto brought a suit in equity in the United States circuit court for the district of Idaho against Thomas G. Lowe, the state sheep inspector of Idaho, and his deputies. In the bill of complaint in said suit they attack the said quarantine proclamation of the governor of the state of Idaho on the ground that it is an arbitrary and unwarranted exercise of power; that the alleged facts upon which it is claimed to be justified and based are wholly false; that said proclamation and the acts and threatened acts of the defendants are arbitrary assumptions of power, entirely unwarranted, unlawful, and in violation of the constitutional rights of the plaintiffs—and demand a writ of injunction restraining said defendants, their deputies, etc., from preventing the sheep of complainants from coming into the state of Idaho. It appears that complainants then had seventy-two thousand five hundred sheep on the border of Idaho, which they were seeking to drive into this state. Upon a hearing in said circuit court, a writ of injunction was issued on March 30, 1901, and on October 24, 1901, the same was dismissed or discharged by said court on the ground that the said court had no jurisdiction in said case. Said bill of complaint, writ of injunction, and other matters in connection with said suit, were offered in evidence by counsel for defendant, and were rejected by the court as immaterial

and incompetent. Counsel for defendant then offered to prove by said witness Smith that the sheep mentioned in the information were brought from Box Elder county, state of Utah, into Oneida county, this state, on or about April 5, 1901, under and in pursuance of said injunction order, and of the inspection made of said sheep on April 4, 1901, by said Lowe and Mc-Berney, acting under said order, and not otherwise. On the objection of counsel for the state, said offer was rejected on the ground of immateriality, and counsel for defendant contend that the court erred in rejecting said offered testimony. It was offered to show the absence of wrongful intent on the part of the defendant, and counsel contend that there can be no crime, large or small, without an evil mind. Quoting from Bishop's New Criminal Law, section 287, counsel say: "In other words, punishment is the·sequence of wickedness, without which it cannot be." Other authorities are cited upon this point, one of which is directly in point, to wit, that of *State v. Gardner,* 5. Nev. 378. The supreme court of California, in *People v. O'Brien,* 96 Cal. 171, 31 Pac. 45, in discussing the case of *State v. Gardner, supra,* says that it is the only case the court has found that holds to the doctrine which is announced in that case, and cites with approval *Gardner v. People,* 62 N. Y. 305,. which says: "The case cited from 5 Nev. 378, tends to support the views of the plaintiff in error, but it is evident that a majority of the court struggled to relieve the defendant from a harsh treatment for a comparatively innocent act." And in *People v. O'Brien,* 96 Cal. 177, 31 Pac. 47, the court says: "When an act, in general terms, is made indictable, a criminal intent need not be shown, unless from the language or effects of the law, a purpose to require the existence of such intent can be discovered." And in *State v. McBrayer,* 98 N. C. 623, 2 S.. E. 756, it is said: "It is a mistaken notion that positive, willful intent to violate the criminal law is an essential ingredient in every criminal offense, and that where there is an absence of such intent there is no offense. This is especially so as to statutory offenses." Of course, if the evidence offered would have shown that the defendant had no intention to bring his sheep

into Idaho, and that they strayed in or came in by accident, it might have been a complete defense; but such was not the effect of the testimony sought to be introduced, but directly the opposite. It would have showed that the defendant went about the matter very deliberately, with the intent at almost any hazard to violate said law. He, with others, instituted an action in a court that had no jurisdiction of the subject matter thereof, and procured the issuance of a void writ of injunction to assist him in the violation of said law. He knew of the proclamation and of the law, and with careful, studied intent and determination he proceeded to violate them, and to do the very act thereby declared to be unlawful. It was not error to exclude said testimony, for by it the defendant could not shield himself from the penalty imposed for the violation of the law, which he, with such determined and persistent effort, violated. It is no defense for a person who is desirous of violating a penal statute to go into a court not having jurisdiction in the matter, and obtain therefrom an injunction against the persons whose duty it is to enforce such penal statute, whereby they are prohibited from doing so, and he thereafter do what is prohibited, and escape the penalty by showing the issuance of a void writ that the court had no jurisdiction to issue. The suit in which said injunction was issued was brought by a number of Utah sheepmen to enjoin the proper officers of the state of Idaho from enforcing the statutes of the state, and the proclamation of the governor issued in pursuance of said statutes. The United States circuit court, after issuing said writ of injunction, dismissed said suit for want of jurisdiction, and dissolved said injunction. The void action of said court, done at the request of the defendant and others, will not justify him in his violation of the statutes of this state, and will not shield him from the penalty for such violation. And so far as the evil mind or criminal intent of the defendant is concerned, the violation of said statute does not involve a criminal intent or evil mind, such as is necessary in the crimes of larceny, burglary, or murder. The statute under consideration does not provide that the driving into this state of sheep from infected

districts, and contrary to the governor's proclamation, must be done maliciously, feloniously, or with a wicked mind or evil intent. The law under consideration (see Laws 1899, p. 452) makes the act of driving certain sheep into the state unlawful, without regard to the question of the intent of the person doing that act. Whenever an act is knowingly done, the law presumes the intent. Said section is as follows: "Whenever the governor of the state of Idaho has reason to believe that scab or any other infectious disease of sheep has become epidemic in certain localities in any other state or territory, or that conditions exist that render sheep liable to convey disease he must thereupon, by proclamation, designate such localities and prohibit the importation from them of any sheep into the state, except under such restrictions as, after consultation with the state sheep inspector, he may deem proper. Any person or corporation who, after publication of such proclamation, receives in charge any such sheep from any of the prohibited districts and transports, conveys or drives the same to and within the limits of any of the counties of this state, is punishable by fine not exceeding one thousand dollars, nor less than two hundred dollars, and is liable for all damages that may be sustained by any person by reason of the importation or transportation of such prohibited sheep." It will be observed from the plain reading of said section that no evil or criminal intent is necessary in order to commit the act there made unlawful. In *State v. Rechnitz,* 20 Mont. 488, 52 Pac. 264, it is said: "But as to such acts which are not *mala in se,* but *mala prohibita,* a different rule prevails, and it is the duty of a person to take care that he obeys the statute or ordinance, lest he be punished, for the penalty is imposed if the act is done ever so innocently." (See, also, *Leggatt v. Prideaux,* 16 Mont. 205, 50 Am. St. Rep. 498, 40 Pac. 377.) In *Gardner v. People,* 62 N. Y. 299, the court, referring to the point under consideration, said: "The rule on the subject appears to be that in acts *mala in se* the intent governs, but in acts *mala prohibita* the only inquiry is, Has the law been violated? It is a well-settled rule that all orders, judgments, or other process issued by a court in a matter in which it was with-

out jurisdiction are void, and that such orders or process are no protection to a person who acts under them." (Andrus v. Blazzard, 23 Utah, 233, 63 Pac. 888, 54 L. R. A. 354, and cases therein cited.) In prosecution for adultery of one who has remarried after securing a divorce from a court that had no jurisdiction, an honest belief that such decree was valid is no defense. (1 Am. & Eng. Ency. of Law, tit. "Adultery," p. 750, note 2; also 17 Am. & Eng. Ency. of Law, 1057; Wharton's Criminal Law, 9th ed., secs. 1704, 1725, 1726.) In State v. Whitcomb, 52 Iowa, 85, 35 Am. Rep. 258, 2 N. W. 970, the court says: "A void judgment has no effect, is nowhere binding, and nothing can be based thereon. It will support no claim of right, and give protection for no act. This doctrine is familiar, and does not demand the support of authorities."

Counsel for appellant also contends that the information fails to allege that the act charged therein was committed willfully, unlawfully, knowingly, or with wrongful intent, and for that reason is fatally defective. There is nothing in that contention. It is well settled that an information or indictment charging an offense in the language of the statute is sufficient, and that is essentially true if the offense is a statutory one, and does not require a criminal intent for its commission. (People v. Russell, 81 Cal. 616, 23 Pac. 418; State v. Ellington, 4 Idaho, 529, 43 Pac. 60; People v. Butler, 1 Idaho, 231.) The information sufficiently charges the offense therein mentioned.

We find no error in the record, and the judgment is affirmed. Costs are awarded to the state.

Quarles, C. J., and Stockslager, J., concur.