397 P.2d 261

**The STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Elwin M. HALL, Defendant-Appellant.**

**No. 9299.**

Supreme Court of Idaho.

Nov. 30, 1964.

William B. Taylor, Jr., Grangeville, for appellant.

Allan G. Shepard, Atty. Gen., and Thomas G. Nelson, Asst. Atty. Gen., Boise, W. C. MacGregor, Jr., Prosecuting Atty. Grangeville, for respondent.

McFADDEN, Justice.

The defendant-appellant, an enlisted man of the United States Air Force, was convicted of the crime of "attempt to commit rape", although by the amended information, he was charged with the crime of "assault with intent to commit rape"; he has appealed from an order denying his motion for new trial, and the judgment of conviction and sentence imposed.

The pertinent portion of the amended information reads:

"That on or about the 10th day of March, 1962, at or near Cottonwood, in the said County of Idaho, State of Idaho, he, the said Elwin M. Hall, then and there being, did then and there knowingly, willfully, unlawfully and feloniously with the present ability to do so, unlawfully attempt to assault and have sexual intercourse with one Barbara Hall, a female child under the age of eighteen (18) years, being then of the age of thirteen years (13), and which said minor child was not then and there the wife of the said defendant; but rather was his own natural daughter; that the said defendant did lay his hands and person upon the naked body of the said minor child with the intent then and there had to carnally know and ravage said Barbara Hall, and accomplish with her an act of sexual intercourse, attempting thusly to commit a violent injury upon the person of said thirteen (13) year old minor child, all of which is contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Idaho."

The defendant assigns as error the instructions given by the court dealing with

the offense of "attempt to commit rape". He contends that "attempt to commit rape" cannot be considered as an offense included within the charge of "assault with intent to commit rape". He asserts that they are two different offenses, each with different elements; also that if it be determined that the offense of "attempt to commit rape" is an offense included within "assault with intent to commit rape", a greater punishment can be imposed for the commission of such lesser included offense than could be imposed for the commission of the greater offense, referring to the penalties imposed by I.C. § 18–907, which fixes the penalty for aggravated assaults, including assault with intent to commit rape, and also to I.C. § 18–306, which fixes the penalty for attempts.

We do not agree with defendant's contention that the offense of "attempt to commit rape" is not an offense that can be included in the charge of "assault with intent to commit rape". I.C. § 19–2312 provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."

In State v. Anderson, 82 Idaho 293, 352 P.2d 972, this court in discussing what constitutes an included offense, after referring to I.C. § 19–2312, and reviewing a number of the previous Idaho decisions, stated:

"In State v. Petty, 73 Idaho 136, 248 P.2d 218, we held that a charge of lewd and lascivious conduct does not necessarily include assault with intent to commit rape, but that a charge of assault with intent to commit rape necessarily includes the charge of lewd and lascivious conduct.

"In State v. Owen, 73 Idaho 394, 253 P.2d 203, 212, we laid down the general rule:

" 'Generally any offense which is included within the language of the information, or necessarily included in the charge, should be submitted to the jury.'

"We therefore hold, in our desire to clear the confusion which has arisen in the premises, that pursuant to I.C. § 19–2312, any offense, the commission of which is necessarily included in that charged in the indictment or information, is an included offense; that, therefore, it is proper for an accused to request, and for the trial court to give, an instruction permitting a conviction of such an included offense, if there is sufficient evidence to support a conviction of the included offense."

In State v. Blacksten, 86 Idaho 401, 387 P.2d 467, the court determined that aggravated assault, charged under the particular information, was an offense included in

the charge of aggravated battery, in that the aggravated assault was alleged as the manner and means of the commission of the aggravated battery and therefor was an included offense.

In the information here under consideration, the means by which defendant is alleged to have committed the offense of "assault with intent to commit rape" was by his attempt to assault with intent to have sexual intercourse with the prosecutrix. The attempt is alleged as the means by which the assault was committed.

The attempt was not by way of threats or violence. Thus the means by which the alleged offense was committed, also constituting an offense, was sufficiently set forth in the information as an included offense.

Nor do we concur in defendant's contention that a greater punishment can be imposed for the commission of the lesser or included offense that can be imposed for commission of the greater offense charged. The penalty prescribed for the offense of "assault with intent to commit rape" is imprisonment for a term of one to fourteen years, I.C. § 18–907; and for the offense of "attempt to commit rape" is one-half of the punishment for the crime of rape, which by statute is fixed at imprisonment for a term of one year to life, I.C. § 18–6104, § 18–306. While a sentence of one-half of a life sentence cannot be calculated, a court is authorized to fix a base maximum sentence, for the offense of rape, at less than life, which base maximum may then be used as the basis to compute the sentence of one-half of such base to be imposed by the court for the offense of "attempt to commit rape", and the actual sentence thus fixed may be less than the sentence imposed by I.C. § 18–908 for the offense of "assault with intent to commit rape." See: People v. Gardner, 98 Cal. 127, 32 P. 880 (1893); In re De Camp, 15 Utah 158, 49 P. 823 (1897); State v. Mandel, 78 Ariz. 226, 278 P.2d 413 (1955).

Defendant by four of his assignments asserts that the court erred in admitting into evidence State's Exhibit I, which is a written statement executed by the defendant. These assignments of error will be considered together. He asserts that upon proper objection and request the court did not permit, out of the hearing of the jury, a voir dire examination of the witness before whom the statement was taken, so that the circumstance surrounding the making of the statement could be inquired into by the court and by the defendant to determine whether it had been made voluntarily. He further claims the court erred in admitting Exhibit I into evidence over his objection; in the court's denominating the written statement as a "confession" in the presence of the jury; and in the court's rulings concerning testimony of the defendant's witness, a psychiatrist, touching upon the defendant's mental condition at the time of his execution of Exhibit I.

During the course of the trial the prosecution presented the testimony of a special agent for the Office of Special Investigation of the United States Air Force. The witness was the one who took the defendant's statement, Exhibit I, and administered the oath. This witness testified on direct examination he was an investigating agent of the Air Force, and that he investigated the purported crime; that during the course of his investigation he had a conversation with the defendant. He stated that he read Article 31 of the Uniform Code of Military Justice (10 U.S.C.A. § 831,)[1] to the defendant and advised him of the nature of the investigation being conducted. He testified that:

"I informed Sergeant Hall that he need not make any statement, that any statement that he made could be held against him either in a court-martial or any other court of competent jurisdiction, I informed him that the nature of

the offense which I was investigating was assault with intent to commit rape and I also informed him that no force, unlawful coercion, unlawful influence or anything could be used to obtain a statement."

Following such testimony, the defendant requested that the jury be excused, which was done. While Exhibit I had not as yet been offered, both the State and the defendant in a colloquy with the court held in the absence of the jury considered the question then before the court to be whether the written statement had been given voluntarily in order that it might be received in evidence. The court while the witness was still on the stand, stated: " * * * I don't think it makes any difference whether it is an admission or confession because he [defendant] was advised of his rights. Now this further question—after this happened, Mr. Witness, then you took a statement from him at that time did you?" To this last

---

1. Armed Forces, Title 10, page 1008, § 831, Art. 31.
"Compulsory self-incrimination prohibited
"(a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.
"(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and

that any statement made by him may be used as evidence against him in a trial by court-martial.
"(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.
"(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial." Aug. 10, 1956, ch. 1041, 70A Stat. 48.

question, the witness answered: "Yes, sir." The court thereafter held that there was sufficient foundation already laid, to establish the statement had been made voluntarily by the defendant.

The defendant had the right to rebut this showing, but presented no witnesses, and made no offer of proof that could have controverted the testimony of the witness. After the jury returned, the State offered the written statement in evidence. The only objection presented by the defendant to this statement at that time was to renew the previous objection, which the court overruled and admitted the exhibit in evidence. After the direct examination of the state's witness, the defendant cross-examined him at length concerning the taking of the written statement. The defendant later testified as to his recollection of the interview with the witness who had taken the statement.

The court by its instructions advised the members of the jury that they could disregard the statements of the defendant in Exhibit I, if they should determine that such statements were not voluntarily made.

██ Throughout defendant's argument it is contended that the written statement was not voluntarily made, and hence inadmissible. In the event that such written statement be considered as an "admission", and not a "confession", the question whether it was voluntarily given becomes immaterial. State v. Garney, 45 Idaho 768, 265 P. 668; State v. Spencer, 74 Idaho 173, 258 P.2d 1147; State v. Constanzo, 76 Idaho 19, 276 P.2d 959. For a confession to be admissible it must have been voluntarily executed. Culuobe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037.

██ For defendant's assignments and argument (concerning whether the written statement Exhibit I was voluntarily given) to be meaningful, we are assuming, although not deciding, that such statement constituted a "confession" and not a mere "admission." The admission of a confession, when its admission is objected to upon the ground that it was not given voluntarily is primarily for the determination of the trial court. State v. Nolan, 31 Idaho 71, 169 P. 295; State v. Andreason, 44 Idaho 396, 257 P. 370; State v. Van Vlack, 57 Idaho 316, 65 P.2d 736. Whether a confession is admissible as being voluntarily given is a question directed primarily to the discretion of the trial court, State v. Dowell, 47 Idaho 457, 276 P. 39, 68 A.L.R. 1061. The function of the court is to determine the admissibility of evidence presented, and the function of the jury is to determine the weight to be given the evidence and the credibility of the witnesses. State v. Dowell, 47 Idaho 457, 276 P. 39, 68 A.L.R. 1061; State v. Andreason, 44 Idaho 396, 257 P. 370; 23A C.J.S. Criminal Law § 1135, p. 295; 3 Wigmore on Evidence 345, § 861. In the instant case the only evidence before the court at the time of the admission into evidence of Ex-

hibit I, was the testimony of the State's witness, and absent any controverting testimony by the defendant, the trial court properly admitted it into evidence.

 The court's denomination of Exhibit I, as a "confession", if erroneous, certainly was not prejudicial, for the court in the instructions to the jury referred to the statement as a "confession or admissions".

 While defendant asserts error was committed by the trial court in its rulings on the admissibility of the testimony of a psychiatrist called by the defendant as an expert witness, from the state of the record no reversible error appears. It is asserted that the trial court upon objection, refused to allow the witness to testify to a hypothetical question on direct examination. However, the question was later rephrased and the witness allowed to testify, as to his opinion. Upon the witness's second redirect examination another hypothetical question was propounded the witness, and after objection the court refused to allow the witness to state his opinion in response to the hypothetical question. Thereupon defendant, in the absence of the jury, made an offer of proof, which was denied. The offer of proof was so closely related to the testimony of this same witness stating his opinion, admitted on direct examination, it is difficult to see where there was any prejudice to the defendant. It is recognized that competent and relevant testimony touching upon the voluntary nature of a confession is admissible in evidence for consideration of the jury in determining whether a confession has been voluntarily given. State v. Lott, 21 Idaho 646, 123 P. 491; State v. Andreason, 44 Idaho 396, 257 P. 370; State v. Dowell, 47 Idaho 457, 276 P. 39, 68 A.L.R. 1061. 20 Am.Jur. Evidence §§ 538, 539, p. 457. Here, however, where the expert witness had already given his opinion on direct examination, rejection to the offer of proof covering practically the same area during the second redirect examination of this witness is not prejudicial.

 Appellant also contends that there was no proof of the corpus delicti as a matter of law, since neither defendant's written statement, nor the testimony of the prosecutrix was corroborated. It is a well recognized rule that the fact a crime has been committed cannot be proven by the uncorroborated extrajudicial confessions or statements of a defendant. However, only slight corroboration is necessary. State v. Keller, 8 Idaho 699, 70 P. 1051; State v. Wilson, 51 Idaho 659, 9 P.2d 497; State v. Van Vlack, 57 Idaho 316, 65 P.2d 736. In this case the testimony of the prosecutrix established the fact that the crime had been committed. She had testified in detail as to the actions of the defendant that led to the institution of this criminal action. The statements contained in Exhibit I corroborated the testimony of the prosecutrix and sufficiently establishing the corpus de-

licti, State v. Downing, 23 Idaho 540, 130 P. 461; Annot. 40 A.L.R. 460.

Another serious question presented by this appeal concerns admission of certain testimony which the defendant asserts to be hearsay. The first testimony complained of is the prosecutrix's recitation of a conversation between herself and her younger sister. The testimony of this conversation came after the prosecutrix had testified in detail as to the defendant's actions towards her that took place in the early morning hours at the defendant's home. The defendant's activities had awakened the prosecutrix's younger sister who then asked the prosecutrix what was wrong with the defendant. The prosecutrix testified to the conversation she had with her younger sister, over the defendant's objection that such testimony was hearsay for there was no showing that the defendant was present. The ruling of the trial court admitting this testimony was correct, because it was so closely connected with the alleged criminal acts as to constitute it as a part of the res gestae and thereby admissible under that exception to the hearsay rule. State v. Breyer, 40 Idaho 324, 334, 232 P. 560.

The next testimony the defendant asserts was improperly admitted over his objection and which he asserts constitutes reversible error pertains to the testimony of the prosecutrix concerning a telephone conversation she had with a Mrs. Gehring. The prosecutrix testified that later that morning she telephoned Mrs. Gehring and arranged the details of a previously planned trip to Grangeville; and that they took the prosecutrix's brother and sister along and went to Grangeville where they got some things Mrs. Gehring needed and the prosecutrix got some new shoes. After returning to Cottonwood from the trip to Grangeville, the prosecutrix sitting alone with Mrs. Gehring in the car, told her what had happened. Over the defendant's objection that it was hearsay, all this testimony was admitted. The state contends that such testimony was admissible to show that the prosecutrix did attempt to converse with someone whom she trusted, outside her father's home, seeking advice at the earliest possible moment. The defendant contends such testimony should not have been admitted into evidence, asserting that any complaint by a prosecutrix must have been made soon after the alleged outrage in order for it to be admissible, and that any complaint in this cause by the prosecutrix did not come for many hours subsequent to the alleged outrage. The record shows that the prosecutrix, a thirteen year old girl had the responsibility of the younger children in the family, that her mother and father were separated, she having the responsibility of the household under the direction of her father. From the record it can be inferred that the prosecutrix, at the earliest possible moment after the defendant had left, attempted to contact a person outside the

defendant's home, but because of the circumstances of the younger children being present was unable to discuss the problem with Mrs. Gehring until later in the day. Under the facts of this case the court did not err in admitting this testimony.

A related question is also presented by the defendant dealing with the admission of the testimony of Mrs. Gehring as to what the prosecutrix had told her while the two of them were seated in the car. Mrs. Gehring testified that the conversation between the two of them had taken place at about 5:30 or 6:00 o'clock P.M., on the evening of the day of the alleged offense, and after they had returned from the trip to Grangeville. Mrs. Gehring testified in great detail over the defendant's objection to the details of the conversation wherein the prosecutrix had minutely related to the witness the events of the early morning hours involving the prosecutrix and the defendant.

In State v. Garney, 45 Idaho 768, 265 P. 668, this court held that in a rape prosecution it may be shown that the prosecutrix made complaint of the outrage soon after its commission, but that details of the conversation and the name of the accused are inadmissible. See also: State v. Fowler, 13 Idaho 317, 89 P. 757; State v. Black, 36 Idaho 27, 208 P. 851.

The problem of the admissibility of this type of hearsay testimony was discussed at length in 4 Wigmore Evidence, §§ 1134–

1140 (3rd Ed. 1940). In his discussion Prof. Wigmore points out three distinct areas where such testimony is admissible, which are:

1. Explanation of an inconsistency. It being natural for a woman to complain to someone responsible for her welfare of such an outrage, her failure to complain could be urged by the defense to contradict and discredit her testimony. Because of this, cases generally allow the prosecution to forestall such discrediting, or any inference to be derived from failure to complain, by admitting testimony of the complaint, without naming the person, or reciting the details. Admission of such testimony under this theory is not without limitation. The details (except as to identify the time and place of the conversation) are inadmissible, because, the fact that she did complain is all that is necessary to refute any inferred inconsistency; and secondly, allowing the witness to recount the details is strictly hearsay. The further limitation appears that the prosecutrix must first have been a witness, for if she did not testify, then there would be no inconsistency to refute.

2. Rehabilitation by consistent statement. The purpose of permitting the witness to testify regarding the complaint of the prosecutrix is to show that the latter told the same story to the witness that she told on the witness stand. The prosecutrix must have testified, and the defense have attempted to impeach the witness. (See: State v. Fowler, 13 Idaho 317, 322, 89 P. 757).

3. Spontaneous or res gestae declarations. The declarations of a woman under the fright of a recent assault have been held to be admissible with all the details under the res gestae exception to the hearsay rule.

The lapse of time between the alleged acts and the time of the conversation between the prosecutrix and Mrs. Gehring renders inapplicable as res gestae, the details of the conversation. The defense made no serious attempt to impeach the testimony of the prosecutrix, nor would the details of the conversation with Mrs. Gehring be admissible under the theory of rehabilitation by consistent statements. Testimony of Mrs. Gehring of the complaint of the prosecutrix under the peculiar facts of this case was admissible, but details of the conversation were not.

The remaining assignments of error have been considered, but appear to be without merit. By reason of the conclusions reached herein, detailed discussion of them are not deemed essential.

The judgment of conviction is reversed and the cause remanded for new trial.

KNUDSON, C. J., and TAYLOR and SMITH, JJ., concur.

McQUADE, Justice (specially concurring).

I concur in the conclusion of the majority that the conviction of the defendant was erroneously secured upon improperly admitted evidence. In addition to the errors pointed out by the majority opinion, attention is directed to the circumstances under which the so-called confession was obtained by an investigator of the Air Force. It appears from the record that the investigating agent was investigating a particular crime with the purpose of ascertaining information which would be used towards securing a conviction of the defendant of such crime. As pointed out by the majority opinion, the defendant was advised as to certain civil safeguards preliminarily to the investigator's taking a statement from the defendant. The defendant was not advised as to the seriousness of the charge nor as to his right to be represented by counsel.

Testimony of the investigating agent for the Air Force reveals that he was investigating the defendant for a specific crime and that this agent advised the defendant that "no force, unlawful coercion, unlawful influence or anything could be used" to obtain a statement. Such warning and advice of rights is totally insufficient on the part of an investigating officer to protect the civil rights of a citizen. The defendant was not advised of the knowledge which the agent possessed that a criminal charge was in fact contemplated against the defendant or more likely was in the process of being filed. The defendant was not told he had a right to counsel, thereby having an opportunity to protect any rights which he might have.

A recent case concerning the right to counsel is Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Language used in that case which is pertinent at this point may be summarized by saying the advice of counsel is essential to protect a suspect during interrogation because events which transpired thereat could affect the full nature of the trial by way of defenses and admission of evidence.

Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, held that every person accused of a crime is assured by the Constitution of the United States that he may have counsel at trial.

The record does not disclose that defendant Hall requested counsel and the record is likewise silent that the defendant was advised as to his right to counsel. In the absence of a specific request for counsel, it is vital that a suspect be advised of his right to counsel, as assured by the Constitution of the United States. See Gideon v. Wainwright, supra.

Escobedo v. Illinois, supra, said:

"Our Constitution, unlike some others, strikes the balance in favor of the right of the accused to be advised by his lawyer of his privilege against self-incrimination."

Most assuredly the pretrial examination and interrogation of a defendant by trained investigators is a critical time in the course of events which ultimately places a defendant on trial for a crime. While the case of Escobedo v. Illinois, supra, rules that statements made in the absence of counsel are inadmissible, the conclusion is inevitable that investigators must inform the defendant that he has a right to counsel before the interrogation is conducted.

Escobedo v. Illinois, supra, was discussed and analyzed in People v. Dorado, 40 Cal. Rptr. 264, 394 P.2d 952 (Cal., 1964). In that opinion the Supreme Court of California arrived at the conclusion that Escobedo v. Illinois, supra, and other federal cases do not require the accused in a criminal case to request counsel to preclude the use of incriminating statements elicited by the police during an accusatory investigation, unless the right to counsel is intelligently waived, and further, that no waiver can be presumed unless the investigating officers inform the suspect of his constitutional right to counsel or his right to remain silent.

The California court also said:

"We find no strength in an artificial requirement that a defendant must specifically request counsel; the test must be a substantive one: whether or not the point of necessary protection for guidance of counsel has been reached.

"The defendant who does not realize his rights under the law and who therefore does not request counsel is the very

defendant who most needs counsel. We should not penalize the defendant who, not understanding his legal rights, does not make the formal request and by such failure demonstrates his helplessness. Defendant in the instant case was peculiarly helpless; he was a convict without contact with the world beyond the prison; the effect of his confession, irretrievably linking him with the murder, was to expose him to the automatic sequence of the death penalty. To require the formal request for counsel for the application of the rule would be to favor the defendant whose sophistication or status had fortuitously prompted him to make the request."