**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37433**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 58S** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: October 14, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| TODD JAMES SURINER, | ) | |
| | ) | **SUBSTITUTE OPINION** |
| Defendant-Appellant. | ) | **THE COURT'S PRIOR** |
| | ) | **OPINION DATED** |
| | ) | **OCTOBER 5, 2011 IS** |
| | ) | **HEREBY WITHDRAWN** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Deborah A. Bail, District Judge.

Judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen, <u>reversed</u>.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.  Diane M. Walker argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.  Mark W. Olson argued.

---

LANSING, Judge

Todd James Suriner appeals from his judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen.  Suriner argues that the State failed to present evidence of the corpus delicti of the crime independent of his extrajudicial confessions, and that the district court erred in instructing the jury.  Because we conclude that the State presented no independent evidence of the corpus delicti, we reverse Suriner's judgment of conviction.

**I.**

**FACTS AND PROCEDURE**

Suriner and his wife had twin daughters who, at the time of the events in this case, were approximately three years old.  Suriner's wife informed authorities that she became suspicious of misconduct by Suriner after she learned the twins had told their aunt that Suriner had put his

1

finger in their "business," the word used by the girls to refer to their vaginas. After learning of these accusations, Suriner agreed to take a polygraph test. Before the test was administered, however, he confessed to the polygraph examiner that he had penetrated one daughter's vagina with his finger. At a second interview with a police detective, Suriner admitted to abusing both daughters in this way on multiple occasions over the previous year. Suriner stated that he abused the girls only on Sundays while his wife was at work. After Suriner confessed, his daughters were given physical examinations that yielded no finding of any abnormalities. Due to their young age, they were unable to participate in an interview with a social worker. Based upon his confessions, Suriner was charged with two counts of lewd conduct with a minor under the age of sixteen, I.C. § 18-1508. While awaiting trial, Suriner made three telephone calls from the jail in which he admitted he abused his daughters and expressed remorse for his actions.

Because of the girls' age, their testimony was not offered at trial. The State's evidence included testimony by the officers who interviewed Suriner, the doctor who examined the girls, and Suriner's wife. The polygraph examiner who conducted the first interview testified that he asked whether Suriner knew why he had been brought in for questioning and that Suriner indicated he understood it was regarding his daughters. The officer then asked what Suriner could tell him about the case, and Suriner replied that he was not "sure where the girls had come up with this," but the only thing "he could think of was when he was doing his dad duties."[1] Video recordings of Suriner's confessions and audio recordings of his telephone calls from jail were also admitted. In the videos, the polygraph examiner made multiple references to the statements made by Suriner's daughters. Suriner objected to these references on hearsay grounds. In response to the objection, the district court instructed the jury that any reference to statements made by Suriner's daughters were inadmissible hearsay, that they were not to be used as evidence that a crime was committed, and that the statements were admissible only as context for the response they elicited from Suriner.

At the close of the State's case, Suriner moved for a judgment of acquittal on the ground that the State's evidence did not satisfy the doctrine of corpus delicti because it included no evidence corroborating Suriner's confessions. The district court denied the motion and the jury ultimately found Suriner guilty of both charges. On appeal, Suriner argues that the district court

---

[1] Suriner further explained that his "dad duties" included getting the twins up in the morning, taking off their diapers, cleaning them, and getting them dressed.

2

erred in denying his motion to dismiss because the State failed to prove the corpus delicti of the crime independent of his extrajudicial confessions, and that the court erroneously instructed the jury. Because we find the first issue dispositive, we do not address the jury instruction issue.

## II.

## ANALYSIS

The term "corpus delicti" literally means "body of the crime," BLACK'S LAW DICTIONARY 346 (7th ed. 1999), and refers to the evidence needed to establish that the charged crime actually was committed. The corpus delicti rule prohibits the conviction of a criminal defendant based solely upon the defendant's own out-of-court confession to prove that a crime occurred. *See State v. Tiffany*, 139 Idaho 909, 913, 88 P.3d 728, 732 (2004); *State v. Urie*, 92 Idaho 71, 73, 437 P.2d 24, 26 (1968); *State v. Wilson*, 51 Idaho 659, 669, 9 P.2d 497, 500-01 (1932); *State v. Keller*, 8 Idaho 699, 704-05, 70 P. 1051, 1052 (1902); *State v. Roth*, 138 Idaho 820, 822, 69 P.3d 1081, 1083 (Ct. App. 2003). It thereby protects against convicting the innocent on the strength of a false or mistaken confession.[2] It has been said that reasons for the rule include the danger of misreporting what the accused said; that the rule is a safeguard against coerced confessions; that an accused may himself be mistaken about whether a crime was committed; that the rule safeguards against false confessions from mentally disabled persons; and that the rule forces the prosecution to use its best evidence. *Urie*, 92 Idaho at 76, 437 P.2d at 29 (McFadden, J., specially concurring).

Generally, to prove an accused guilty of a crime, the State must produce evidence of three broad elements: (1) that a harm or injury occurred; (2) that the harm or injury was caused by someone's criminal acts; and (3) the identity of the person who caused it. *See id.* at 75, 437 P.2d at 28; *Roth*, 138 Idaho at 823, 69 P.3d at 1084. Historically, under the traditional formulation of the corpus delicti doctrine, the prosecution was required to show the "body" of a crime by establishing the first two of these elements--the injury and the criminal agency-- independently from a defendant's confession. *Roth*, 138 Idaho at 823, 69 P.3d at 1084; *State v.*

---

[2] The corpus delicti rule was developed at common law in response to cases in which alleged homicide victims were found to be alive after the accused, on the basis of his confession, had been convicted and executed. *State v. Urie*, 92 Idaho 71, 75, 437 P.2d 24, 28 (1968) (McFadden, J., specially concurring). Though it originally applied only to homicide cases, in the United States it has been expanded to cover most serious crimes. *Id.*; Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. PA. L. REV. 638, 641 (1955).

*Darrah*, 60 Idaho 479, 482, 92 P.2d 143, 144 (1939). However, it appears that under the corpus delicti doctrine as currently formulated by Idaho Supreme Court decisions, the State need not present independent evidence on both corpus delicti elements, but may meet its burden with evidence to independently corroborate either the fact of injury or criminal agency. *Urie*, 92 Idaho at 73, 437 P.2d at 26. *See also Tiffany*, 139 Idaho at 914-15, 88 P.3d at 733-34 (affirming involuntary manslaughter conviction where mother's confession to killing child was corroborated by fact that child died while in her exclusive care, but no independent evidence indicated death was caused by criminal act). This may be accomplished by either direct or circumstantial evidence. *Keller*, 8 Idaho at 704, 70 P. at 1052. Although a defendant's extrajudicial admission, standing alone, is insufficient to support a conviction, only slight corroborating evidence is necessary. *Tiffany*, 139 Idaho at 915, 88 P.3d at 734; *State v. Downing*, 23 Idaho 540, 544, 130 P. 461, 462 (1913).

Here, the alleged victims were too young to testify, and no adult testified to anything that the girls had said, presumably because such testimony would have been precluded by the hearsay rule, Idaho Rule of Evidence 802. Nor did any witness claim to have seen any conduct by Suriner that was indicative of sexual molestation of the girls. Thus, Suriner contends, he was impermissibly convicted based solely upon his out-of-court confessions.

The State argues, however, that there was corroborating evidence, though slight, in testimony showing that Suriner had the opportunity to commit the crimes. In his confessions, Suriner said that he abused his daughters on Sundays when his wife was at work, and at trial Suriner's wife confirmed that he was alone with his daughters on Sundays because she worked on those days. Contrary to the State's argument, the wife's testimony did not satisfy the State's burden. Although Suriner's wife corroborated a tangential detail of his statement to police, her testimony did not meet the corpus delicti requirement because mere opportunity does not tend to prove either injury or a criminal act. *See People v. Robson*, 80 P.3d 912, 913 (Colo. App. 2003) (holding trial court did not err in granting motion to dismiss because the State proved only that defendant had the opportunity to commit the crime and opportunity alone is insufficient to satisfy the requirements of corpus delicti); *People ex rel. T.A.O.*, 36 P.3d 180, 181 (Colo. App. 2001) (holding evidence that opportunity to commit the charged offense did not satisfy requirements of corpus delicti); *State v. Campbell*, 178 P.3d 337, 340 (Or. Ct. App. 2008) (same); *State v. Ray*, 926 P.2d 904, 907 (Wash. 1996) (same).

The State also argues that Suriner's confessions and expressions of remorse to a third party, which corroborated his confessions to police, satisfied the requirements of corpus delicti. This evidence consisted of three recorded telephone conversations between Suriner and his sister-in-law while he was in jail. During these conversations, Suriner expressed remorse, stating that he was at fault and needed to pay for what he did to his daughters. We note, however, that the statements Suriner made to his sister-in-law are, in themselves, extrajudicial confessions subject to the corpus delicti doctrine. It is generally held that additional admissions by an accused are insufficient to corroborate an initial confession for purposes of the corpus delicti rule. *See United States v. Calderon*, 348 U.S. 160, 163-64 (1954) (holding additional admissions were insufficient to corroborate defendant's initial confession and the Court must look for other evidence a crime was committed); *United States v. Northrup*, 482 F. Supp. 1032, 1037 (D. Nev. 1980) (holding that, "if two admissions, in and of themselves, are untrustworthy, obviously they cannot be bootstrapped together to raise each other to the level of trustworthiness"); *McMillian v. State*, 499 A.2d 192, 198 (Md. Ct. Spec. App. 1985) (holding that multiple confessions of an accused cannot be viewed as corroborative of one another); *State v. Weisser*, 150 P.3d 1043, 1051 (N.M. Ct. App. 2006) (saying the court is "not convinced that the mere fact that a defendant tells more than one person about his or her alleged acts necessarily establishes the trustworthiness of such statements"); *State v. Aten*, 900 P.2d 579, 585 (Wash. Ct. App. 1995) (holding that additional admissions are insufficient to corroborate a confession); *State v. Ferry*, 275 P.2d 173, 174 (Utah 1954) ("To say a second confession, without more, could be used to prove the corpus delicti, obviously would be to devour the rule itself, which is predicated on the fact that one confession alone, with nothing more, cannot prove the corpus delicti,--there being no magic or significance to a repetition thereof."). *But see State v. McClain*, 292 N.W. 753, 754-55 (Minn. 1940) (holding that a confession may be corroborated by other plain admissions of guilt made by both declarations and conduct of the defendant). It is irrelevant that the statements were made to a third party rather than to the authorities. *See Keller*, 8 Idaho at 703-04, 70 P. at 1052 (applying corpus delicti rule to defendant's confession to third party witness). Therefore, Suriner's confessions at multiple times in different contexts do not provide the requisite corroboration of either injury or criminal agency to satisfy the corpus delicti rule.

Finally, the State argues that the actions taken by Suriner's wife, which evidenced her suspicions about Suriner, provided sufficient corroboration of his confessions. Suriner's wife

testified that there was a "situation" which caused her to contact the authorities concerning her daughters. The State contends that the wife's actions--taking her daughters to the Department of Health and Welfare and contacting the police--satisfied the slight corroboration requirement of the corpus delicti doctrine by an implication that something must have prompted these acts. According to the State, "While the victims did not testify at trial, the fact that they made *some* type of statements that initiated a criminal investigation against Suriner was properly in front of the jury."

The State's argument urges us to find slight corroboration of the corpus delicti from testimony that could be viewed as impliedly conveying the substance of the twins' out-of-court statements. It would require that we rely upon an inference--that Suriner's daughters made statements indicating they were being abused--that was not and could not be presented by direct evidence at trial because it is hearsay. To do so is impermissible. The hearsay rule not only prohibits repetition of an actual out-of-court statement, it also bars an attempt to convey the substance or purport of a statement without directly relating the statement. *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Testimony that conveys the substance of an out-of-court statement for the truth of the matter asserted is properly characterized as hearsay even though the statement is not directly repeated. *State v. Agundis*, 127 Idaho 587, 596, 903 P.2d 752, 761 (Ct. App. 1995). Quite appropriately, the State did not attempt to admit the testimony of the twins' aunt concerning what they told her about Suriner's conduct, nor testimony from Suriner's mother about that hearsay, and the district court properly instructed the jury that hearsay evidence of the girls' statements presented through videos of the polygraph examination could not be considered for the truth of their content because the statements were hearsay. To allow the inference now claimed by the State would just as surely violate the hearsay rule.

Of course, any suggestion that the mere opening of the criminal investigation indicates there must have been *some* evidence against Suriner and thereby corroborates his confessions is specious. To hold that the mere initiation of a criminal investigation constitutes even slight evidence of a criminal act by the person investigated would violate every principle of due process enshrined in our state and federal Constitutions. The fact of an investigation provides no corroboration of either injury or criminal agency. Accordingly, evidence that Suriner's wife

6

contacted authorities and that a criminal investigation was thereby launched does not satisfy the requirements of the corpus delicti doctrine.

It might reasonably be argued that the corpus delicti doctrine has outlived its purpose because, since its genesis, advances in forensic investigative techniques, mental health assessment, and enforcement of due process safeguards have vastly reduced the risk of reliance upon false confessions occasioned by police coercion or mental abnormality. As long ago as 1968, two Idaho Supreme Court justices criticized application of the rule in circumstances where its purposes are not served. *Urie*, 92 Idaho at 75-76, 437 P.2d at 28-29 (McFadden, J. and Taylor, C.J., specially concurring). We also note that not all American jurisdictions follow the corpus delicti doctrine, and some have replaced it with a trustworthiness test.[3] Nevertheless, this Court is bound by precedent calling for application of the corpus delicti rule and preclusion of a criminal conviction without evidentiary corroboration of the accused's confession. Here, the trial evidence did not provide even slight corroboration of either the injury or criminal agency elements of lewd conduct with a minor under the age of sixteen. Accordingly, Suriner's motion for a judgment of acquittal should have been granted.

### III.

### CONCLUSION

The district court erred in denying Suriner's motion for a judgment of acquittal because the trial evidence included no corroboration to satisfy requirements of the corpus delicti rule. Accordingly, Suriner's judgment of conviction for two counts of lewd conduct with a minor under sixteen is reversed.

Judge GUTIERREZ **CONCURS.**

---

[3]     The United States Supreme Court replaced the corpus delicti rule with the trustworthiness doctrine, which requires that a confession be corroborated by substantial independent evidence that tends to establish the trustworthiness of the statement. *See Opper v. United States*, 348 U.S. 84, 93 (1954); *Smith v. United States*, 348 U.S. 147, 156 (1954). Under the trustworthiness doctrine, "The adequacy of corroborating [evidence] is measured not by its tendency to establish the corpus delicti, but by the extent to which it supports the trustworthiness of the admissions." *United States v. Johnson*, 589 F.2d 716, 718-19 (D.C. Cir. 1978). State authorities that have adopted a trustworthiness test in preference to the corpus delicti rule include *State v. Hafford*, 746 A.2d 150, 174 (Conn. 2000); *State v. Yoshida*, 354 P.2d 986, 990 (Haw. 1960); *State v. George*, 257 A.2d 19, 21 (N.H. 1969); *State v. Parker*, 337 S.E.2d 487, 492 (N.C. 1985); *Fontenot v. State*, 881 P.2d 69, 77-78 (Okla. Crim. App. 1994); *State v. Osborne*, 516 S.E.2d 201, 204-05 (S.C. 1999); and *State v. Mauchley*, 67 P.3d 477, 490 (Utah 2003).

Judge Pro Tem SCHWARTZMAN, **DISSENTING**

I respectfully dissent, although I do so with modest caution and circumspection. Were it not for the steady erosion of the traditional "corpus delicti" doctrine in Idaho, from *State v. Urie*, 92 Idaho 71, 437 P.2d 24 (1968) to *State v. Tiffany*, 139 Idaho 909, 88 P.3d 728 (2004), I could easily join in the majority's well-written, researched, and articulate decision. But, as footnoted in the State's brief:

> [T]he Idaho appellate courts' application of the *corpus delicti* doctrine is so distinct from the doctrine's traditional application that at least two commentators have concluded that Idaho does not in fact utilize *corpus delicti*. *See* Don Taylor III, *Evidence Beyond Confession*, 41 Ariz. Att'y 22, 22-27 (May, 2005) (comparing *State v. Tiffany*, 139 Idaho 909, 912, 88 P.3d 728, 732 (2004) to a factually similar Arizona case where, unlike in *Tiffany*, the Arizona Court of Appeals found that the state failed to reach the level of corroboration required by *corpus delicti*, and concluding that "Idaho does not follow the *corpus delicti* rule."); Eugene R. Milhizer, *Confessions After Connelly: An Evidentiary Solution For Excluding Unreliable Confessions*, 81 Temp. L. Rev. 1, 45, fn.275 (Spring, 2008) (including Idaho in a footnote listing jurisdictions that have abolished *corpus delicti*, and correctly recognizing that in Idaho, "'slight corroboration will suffice' to admit confession and corroboration need not establish elements of corpus delicti.") (citing *State v. Urie*, 437 P.2d 24, 26-27 (1968)).

In denying Suriner's motion to dismiss for lack of corroboration, the learned district judge orally ruled as follows:

> In this case, I don't think it is accurate to say that the only corroborating evidence is opportunity. This case is peculiar in Idaho cases, in the sense that the defendant confesses one time at an interview he goes to voluntarily. He confesses one time. He leaves. Days elapse. He goes and confesses again. He elaborates substantially the next time he goes.
>
> And it is a situation where the jury can assess for itself, because everything's been videotaped, what kinds of pressures were brought to bear that might cause a false confession.
>
> And also in this case, there are the unusual features of the defendant calling--initiating calls himself, not to state officers, not in any situation where somebody else is pressing him, but initiating calls to others in which he talks about convicting himself of the crime.
>
> He makes other statements about the offense, and so I think there are very peculiar facts in this case. There's also corroborating evidence as to the externals.
>
> . . . .
>
> I think this is a very unusual case. The facts of this case are very unusual, and I think it warrants presenting the issues to the jury once it's instructed on this standard, and I think it's fair for counsel to argue all facts in the case for both sides and to present it to the jury.

. . . .

But I think when you see the progress of the cases as outlined in *State* [*v.*] *Tiffany*, the rule is "That while an extrajudicial confession standing alone is not sufficient to convict an accused in the absence of some corroborating circumstances, slight corroboration will suffice."

And that's the rule in Idaho. That's what the jury should be asked to decide, if it exists or not. But I do think that this case does present some very unusual factors with all the times--we are not talking about an extrajudicial admission.

We are talking about many extrajudicial admissions in many different contexts. That's unusual. As far as I can see, certainly from any Idaho case, I think there is a little bit in *Tiffany*, but in any Idaho case, I did not see this number of statements by any defendant under so many different contexts.

So I think it should be presented to the jury. I think it's certainly a valid issue to raise, but I think it needs to be presented to the jury for the jury's resolution once they have been given the instruction on how the corpus delicti rule works.

Admittedly, the "corroboration" referred to is diaphanous and "wafer-thin." But, so too was it in *Urie* and *Tiffany*. Add to this Suriner's repeated expressions of remorse, the doctor's testimony that while he did not discover any physical evidence of abuse in cases such as this involving manual-to-genital contact it is common for no physical evidence to be found, opportunity and exclusive care, and the context in which the investigation was launched prior to defendant's multiple confessions/admissions in different situations and settings; the "Idaho version" of the corpus delicti corroboration can be satisfied. As in *Tiffany*, we have the similarities that the children were abused while under the exclusive care of Suriner and that his statements about how he abused them were not inconsistent with the medical forensics. *Id.* at 915, 88 P.3d at 734. Moreover, we should not be unmindful that a crime of this nature would be difficult, if not impossible, to prove with any degree of certainty in the absence of a confession on the part of the sexually-abusing parent involved. *See and compare Urie*, 92 Idaho at 74, 437 P.2d at 27.

In conclusion, I would re-echo the majority's allusion to the suggestion that the corpus delicti doctrine may have outlived its purpose and usefulness in Idaho. Indeed, the rule of corpus delicti no longer exists in the federal system because it failed to serve its original purpose. *See United States v. Kerley*, 838 F.2d 932, 940 (7th Cir. 1988) and cases cited in footnote 3 of the majority opinion. Then again, whether or not it will be taken off viable life support and allowed to breathe its last must await higher judicial authority.

9