824 P.2d 912

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Nathan Paul DeWOLFE, Jr., Defendant–Appellant.**

**No. 18947.**

Court of Appeals of Idaho.

Jan. 13, 1992.

Gregory A. Jones, Kootenai County Public Defender, Coeur d'Alene, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A Kootenai County jury found Nathan Paul DeWolfe guilty of the rape and at-tempted first degree murder of a nineteen-year old man. For these crimes, DeWolfe received a fixed, maximum sentence of fifteen years' confinement on the attempted murder charge, to run concurrently with an indeterminate life sentence imposed for the rape. The sole issue on appeal is whether DeWolfe's sentences are excessive. We conclude that they are not, and affirm.

On the evening of December 17, 1989, DeWolfe picked up the victim at his home. The two men had grown up together, had attended the same high school, and had been friends for several years. They were joined later that evening by another friend, Brian Hayes, and the three drove around Rathdrum, Idaho, drinking beer. At around midnight, DeWolfe turned onto a gravelled road. After about twenty minutes he stopped the car and said to Hayes, "This will do." As DeWolfe and Hayes got out, the victim became nervous and locked the back doors of the car. DeWolfe and Hayes unlocked the doors from the front and pulled the victim out and onto the ground. DeWolfe told the victim to take off his pants. Frightened, the victim rolled his pants to his knees, and fell backward into the snow. Hayes stripped him of his trousers, underwear and shoes and turned the victim onto his knees. Hayes and De-Wolfe each then performed anal intercourse on the victim. DeWolfe also forced the victim to perform oral sex. Afterward, DeWolfe told the victim to dress. Hayes then asked, with a framing axe in his hand, "Are we going to use this?" DeWolfe answered, "No, we're going to use this," and he knocked the victim to the ground and used a knife to repeatedly slash the victim's throat. Believing the victim to be dead or dying, Hayes and DeWolfe threw him over an embankment and drove off. The wounds inflicted by DeWolfe were not fatal, however, and the victim managed to walk to a nearby house, where aid was rendered and an ambulance was called.

Based on this evidence, DeWolfe[1] was found guilty of attempted first degree mur-

---

1. In a separate trial, Brian Hayes was charged with rape, but acquitted. The jury in Hayes' case evidently felt the state had not produced sufficient evidence to prove beyond a reasonable doubt that Hayes' sexual contact was non-consensual. However, because Hayes admitted

der, I.C. §§ 18–306, 18–4004; of rape, I.C. § 18–6608; and of the use of a deadly weapon in the commission of a felony, I.C. § 19–2520.[2] The court sentenced DeWolfe to serve fifteen years' mandatory incarceration on the attempted murder conviction,[3] and imposed an indeterminate life sentence for the rape.[4] DeWolfe argues that his sentences were unduly harsh, particularly because he lacked any prior criminal history.

■ We initially note that DeWolfe's sentences are within the statutory limits. Accordingly, we will not disturb them on appeal absent a showing of abuse of discretion. *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989). A sentence may represent such an abuse if it is demonstrated to be unreasonable under the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982); *State v. Koch*, 116 Idaho 571, 777 P.2d 1244 (Ct.App.1989).

■ In reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period of incarceration specified by the sentencing judge as the probable duration of confinement. I.C. § 19–2513; *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). Here, the probable duration of confinement is fifteen years, the minimum period DeWolfe must serve before he is eligible for parole. A period of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). We examine a sentence in a given case, having regard for the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982).

■ The record in this case portrays senseless, callous acts of brutality committed against a childhood friend. According to the medical report, DeWolfe inflicted five to six criss-crossing lacerations, the longest of them five inches, across the victim's throat. The victim's attending surgeon testified at trial that, had the lacerations been even an inch more lateral, they would have cut the major jugular vein and the carotid artery and been truly life-threatening. And although DeWolfe reported to the presentence investigator that he wanted only to "scare" the victim, not to kill him, there is nothing in the record suggesting that DeWolfe ever attempted to

to performing the prohibited acts, the jury found him guilty of the infamous crime against nature, I.C. § 18–6605. *See State v. Hayes,* 121 Idaho 232, 824 P.2d 163 (Ct.App.1992).

2. The crime of attempted murder does not come within the enhancement provisions of I.C. § 19–2520, which allows an increase in the maximum authorized sentence. *See State v. Thompson,* 101 Idaho 430, 614 P.2d 970 (1980). Therefore, the court imposed no additional sentence for the use of a deadly weapon.

3. Idaho Code section 18–306 provides that, unless otherwise prescribed by law, the punishment for attempted crimes shall not exceed one-half of the longest term authorized for the completed crime. Although it is impossible to calculate one-half of a life sentence—the maximum term authorized for first degree murder—the maximum term for attempted murder might still be calculated by reference to greater offenses. *See, e.g., State v. Hall,* 88 Idaho 117, 397 P.2d 261 (1964). Without explaining his calculations, the district court in this case determined fifteen years to be the maximum sentence authorized for attempted first degree murder.

4. Citing the Uniform Sentencing Act, the district court imposed concurrent sentences in the custody of the Board of Correction: fifteen years' fixed on the attempted murder charge; and an indeterminate life sentence on the rape charge, with both sentences to run concurrently. However, the district court did not specify an indeterminate period on the attempted murder charge, nor a determinate period on the rape charge. *See* I.C. § 19–2513. After DeWolfe filed this appeal, the state filed a motion to remand for a correction of the sentences. DeWolfe responded that the sentences were meant to be combined, providing a fixed period of fifteen years' confinement followed by an indeterminate period of life. The state conceded to this interpretation, and the Idaho Supreme Court denied the state's motion to remand. Thus, on the rape charge, the determinate period of incarceration required by I.C. § 19–2513 shall be deemed subsumed by the concurrent fifteen-year fixed sentence imposed on the attempted murder conviction, for the purpose of this review.

check on the victim or to send for help. The evidence presented at trial convinced the district court that DeWolfe had tried to kill the victim in order to hide the fact he, DeWolfe, had raped another man. As remarked by the court at sentencing, had DeWolfe's attempt been successful, he might instead be facing the death penalty. Moreover, although DeWolfe's use of a deadly weapon does not authorize the court to increase the maximum sentence authorized for attempted murder, *see* I.C. § 19–2520; *Thompson,* 101 Idaho 430, 614 P.2d 970, it underscores the seriousness of the offense and may be considered in determining the length of a sentence imposed *within* the maximum authorized.

The district court also received evidence of the severe emotional trauma to the victim and the victim's family, caused by DeWolfe's criminal acts. Approximately seven months after the brutal attack, the victim attempted suicide. His psychologist reported that the victim's psychiatric disability was a direct result of the assault.

DeWolfe argues that his sentences were too severe given that he was a first-time offender. It is true that DeWolfe, who was twenty-one years old at the time he committed these offenses, had no prior criminal record. However, DeWolfe admitted to a serious, long-standing problem with drug and alcohol abuse; the presentence report reveals that he had been expelled from high school for suspected drug-dealing. DeWolfe briefly had sought help through programs such as Port of Hope and Alcoholics Anonymous, but did not continue with any of them. The psychologist evaluating DeWolfe reported the following:

> During the interview, Paul [DeWolfe] showed absolutely no remorse for any of the actions leading up to the present situation. He showed no remorse for his drug abuse behavior. He did indicate some remorse for the way in which he has treated his second wife. Due to his lack of insight and his tendency to blame others for his difficulties, particularly his family, and the violent nature of his crime, I do consider Paul to be a high risk of being a danger to the public if at large.

The psychologist also represented that the prognosis for rehabilitating individuals such as DeWolfe generally is quite poor. Based on the psychological report, his personal interviews with DeWolfe and the results of his own investigation, the presentence investigator recommended that DeWolfe be incarcerated for a term deemed appropriate by the court.

Undoubtedly, DeWolfe's sentences are strict. That does not make the sentences unreasonable, however, if they are warranted under the particular facts of the case. Here, the district court had the benefit of sitting through the entire trial and sentencing proceedings. Upon the evidence before it, the court reasonably could conclude that a period of fifteen years' confinement was necessary to protect society from DeWolfe, and to achieve the related goals of retribution, rehabilitation, and deterrence. We therefore hold that the district court did not abuse its sentencing discretion. Accordingly, the judgments of conviction, including the sentences, are affirmed.

SWANSTROM and SILAK, JJ., concur.