88 P.3d 728

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michelle L. TIFFANY, Defendant–Appellant.**

**No. 30001.**

Supreme Court of Idaho,
Boise, February 2004 Term.

March 25, 2004.

Rehearing Denied April 12, 2004.

John M. Adams, Kootenai County Public Defender, Coeur d'Alene, for appellant. John M. Adams argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen, Deputy Attorney General, argued.

EISMANN, Justice.

This is an appeal from a judgment of conviction, following a jury trial, for the crime of involuntary manslaughter where the defendant-appellant smothered her infant son in an attempt to stop his crying. We affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

On August 5, 1999, appellant Michelle Tiffany's two-month-old son, Nathan, died. She initially reported that she had put Nathan down for a nap and taken a bath, and when she came back into the bedroom he was not breathing. An autopsy performed the next day did not reveal any cause of death, and so the pathologist listed the cause as sudden infant death syndrome (SIDS).

At the end of June 2000, Tiffany told her husband that she had smothered Nathan by twice putting her hand over his nose and mouth to stop his crying. They decided to seek marital counseling concerning the matter. During their first counseling session on September 26, 2000, Tiffany disclosed to the counselor that she had killed Nathan by smothering him. The counselor then called Child Protective Services, who contacted the police. Two officers responded to the counselor's office and talked with Tiffany. She stated that Nathan had been crying all morning, and she finally put her hand over his nose and mouth to make him stop. He then passed out, but when he awakened about a minute later, he began crying louder. She again placed her hand over his nose and mouth, and held it there until she noticed he was starting to turn blue. When she removed her hand, he was no longer breathing. She then telephoned her husband, who told her to call 911, which she did. After having her repeat her account of Nathan's death, the officers arrested her. The next day, a detective with the Kootenai County Sheriff's Department interviewed Tiffany while she was in custody. Her statement regarding the circumstances surrounding Nathan's death was consistent with what she had told the police officers the day before. She was subsequently charged with involuntary manslaughter.

The trial commenced on March 13, 2001. The amended information alleged that Tiffa-

ny had committed involuntary manslaughter in the perpetration of an unlawful act, which was twice covering Nathan's nose and mouth to the point of unconsciousness. When instructing the jury regarding the unlawful act element of the offense, the district court instructed the jury regarding the crimes of injury to a child and battery. On March 15, 2001, the jury returned its verdict finding Tiffany guilty of involuntary manslaughter.

Tiffany timely appealed, and the Idaho Court of Appeals initially heard her appeal. It vacated Tiffany's conviction on the ground that the trial court had erred when instructing the jury regarding the meaning of the word "wilfully," which was used in the jury instructions defining both injury to a child and battery. We then granted the State's petition for review.

## II. ISSUES ON APPEAL

A. Did the district court err in denying Tiffany's motion for a judgment of acquittal?

B. Did the district court err in refusing to give Tiffany's requested instruction regarding mental illness?

C. Did the district court err in refusing to give Tiffany's requested jury instructions on corpus delicti and corroboration of her extrajudicial statements?

D. Did the district err in instructing the jury regarding the crime of injury to a child?

E. Did the district court err in refusing to give Tiffany's jury instruction on proximate cause?

## III. ANALYSIS

■ In cases that come before this Court on a petition for review of a court of appeals decision, this Court gives serious consideration to the views of the court of appeals, but directly reviews the decision of the lower court. *Head v. State*, 137 Idaho 1, 43 P.3d 760 (2002).

## A. Did the District Court Err in Denying Tiffany's Motion for a Judgment of Acquittal?

■ At the conclusion of the State's case in chief, Tiffany moved for a judgment of acquittal on the ground that the State had failed to prove the corpus delicti independent of her confessions. She based her argument upon the testimony of the Pathologist, who stated that death caused by drowning, smothering, or SIDS does not leave any evidence of causation discoverable by autopsy. If the victim forcibly resists, or excessive force is applied, there may be evidence of certain types of traumatic injury that may occur in connection with the smothering. He found no evidence of trauma during Nathan's autopsy, but, because the very young typically do not resist smothering, the lack of trauma did not disprove that Nathan was smothered. Because the autopsy did not disclose any traumatic injury, disease, or congenital abnormality that could have caused Nathan's death, and he was under six months of age, the Pathologist diagnosed his cause of death as SIDS. It is the diagnosis given when there is an otherwise unexplained death of an infant. His autopsy, however, neither proved nor disproved Tiffany's statement that she smothered Nathan. According to the Pathologist, if Tiffany's statement is credible, then he would say that Nathan died because of smothering. If her statement is not credible, then he would say that Nathan died of SIDS. Tiffany argues that she cannot be convicted of manslaughter unless there is other evidence, independent of her out-of-court statements, showing that Nathan's death was caused by criminal action. Absent such evidence, she contends that she is entitled to a directed verdict of acquittal.

In *State v. Keller*, 8 Idaho 699, 70 P. 1051 (1902), this Court first addressed the issue of whether a criminal conviction could be based solely upon the extrajudicial confessions or statements of the defendant. In *Keller* the defendant was convicted of violating the quarantine laws by bringing into Idaho within forty days of the governor's quarantine proclamation issued on March 19, 1901, sheep that had been held, herded, ranged within, or driven through Box Elder County,

Utah. The State's evidence consisted of the governor's proclamation and the testimony of a witness who stated that on April 12, 1901, he went to the defendant's sheep camp in Oneida County, Idaho, that the defendant had a band of about 2,000 sheep there, and that the defendant had stated that he had wintered the sheep on the desert and then two or three days ago had brought them through Box Elder County, Utah, into Idaho. At the close of the State's case, the defendant asked the court to instruct the jury to return a verdict in his behalf because of the insufficiency of the evidence, which motion the court denied. He then appealed, contending that his motion should have been granted because the State failed in its case in chief to prove the corpus delicti.

This Court recognized the general rule that "the fact that a crime has been committed cannot be proved by the extrajudicial confessions or statements of the prisoner, and that there must be some evidence or corroborating circumstances tending to show that a crime has been committed, aside from such confessions or statements." 8 Idaho at 704, 70 P. at 1052. With respect to the corroborating evidence, this Court recognized, "Full proof of the body of the crime,— the corpus delicti,—independently of the confessions, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient." 8 Idaho at 705, 70 P. at 1052 (citation omitted). This Court then held that in this case there was sufficient corroborating evidence and so the court did not err in denying defendant's motion.

The only corroborating evidence offered in the State's case in chief was the witness' testimony that on April 12, 1901, he saw the defendant tending the band of sheep in Oneida County, Idaho. The State offered no corroborating evidence that the defendant had held, herded, ranged within, or driven his sheep through Box Elder County, Utah, or that he had brought them into Idaho after, rather than before, the governor's proclamation.

We next considered the issue in *State v. Downing,* 23 Idaho 540, 130 P. 461 (1913), in which the defendant was convicted of attempting to rape a thirteen-year-old girl.

The State had offered into evidence extrajudicial statements of the defendant, and he contended on appeal that there was insufficient other evidence to establish the corpus delicti of the crime. This Court noted that the applicable rule of law was, "Full proof of the body of the crime, the corpus delicti, independently of the confession, is not required by any of the cases; and in many of them slight corroborating facts are held sufficient." 23 Idaho at 544, 130 P. at 462. The girl had not testified, and the State's case rested largely upon the testimony of a witness named Fix. She testified that the defendant came into Fix's room in his stocking feet, that a few minutes later the girl came into the room with her hair down and her clothes unfastened, that she threw her arms around Fix's neck and told her that the defendant had tried to have sexual intercourse with her, and that the defendant responded, "I didn't hurt you, did I?" In holding that there was sufficient corroborating evidence independent of the defendant's statement, this Court said, "Some of the circumstances corroborating the alleged confession of the defendant in this case are his appearance in the room of witness Fix in his stocking feet, and, shortly after, the girl's coming in crying and in a disheveled condition. We think the corroboration was sufficient." 23 Idaho at 544–45, 130 P. at 462.

The next case addressing this issue was *State v. Wilson,* 51 Idaho 659, 9 P.2d 497 (1932), in which the defendant was convicted of injuring a public jail. Three other codefendants used hacksaws to cut through the steel floor of a tank in which they were incarcerated at the Bannock County jail. They crawled through the hole and the space between the floor of the tank and the jail floor. They were apprehended as they were cutting through the iron bars in a window. The defendant had visited the jail before the attempted escape. When questioned by the police, he stated that he had purchased hacksaws at the hardware store and acid at the drug store and that he had delivered those items to someone at the county jail, who reimbursed him for their actual cost. The proprietor of the drug store testified that eight or nine days before the attempted es-

cape, the defendant had asked him what kind of acid would eat through soft iron over hard steel, and that he had told the defendant that hydrochloric acid would eat through both. An employee of the drug store testified that five days before the escape attempt, the defendant came into the drug store and purchased twelve ounces of hydrochloric acid. No hydrochloric acid was found at the scene of the attempted escape, although one of the codefendants had told a police officer that a bottle of hydrochloric acid had been sent to another codefendant, but the bottle was dropped and broken. There was also a hacksaw found in the window of the jail at the time the codefendants were apprehended, but the opinion does not indicate that it was identified as the type sold at the hardware store where the defendant claimed to have purchased the ones he delivered to the jail.

One of the issues raised by the defendant on appeal was that there was no sufficient evidence corroborating his extrajudicial admissions to sustain a conviction. We held that slight corroborating facts are sufficient and that there was sufficient evidence to corroborate the defendant's admissions and establish his guilt.

In *State v. Van Vlack*, 57 Idaho 316, 65 P.2d 736 (1937), the defendant challenged on appeal the trial court's refusal to instruct the jury as follows: "The jury are instructed that they cannot convict defendant alone upon his own confession, unless the same is corroborated by other evidence tending to connect defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of an offense." On appeal, the defendant relied upon a treatise that cited the Texas case of *Cox v. State*, 69 S.W. 145 (Tex.Crim.App.1902), which had approved that instruction. In addressing the issue, this Court noted in *Van Vlack* that *Cox v. State* had been modified in a later decision of the Texas court, *Ingram v. State*, 78 Tex. Crim. 559, 182 S.W. 290 (App.1915), "holding that confessions may be used to aid even the proof of the corpus delicti not alone the connection of the defendant with the crime." 57 Idaho at 354, 65 P.2d at 753. This Court then held:

The requested instruction was furthermore clearly erroneous in this, that it went beyond the law as heretofore laid down by this court as to what evidence, in addition to the confessions of the defendant, is necessary to sustain a conviction and did not state that slight corroborating facts are sufficient, which has clearly been the rule in this State since 1902.

57 Idaho at 354–55, 65 P.2d at 753.

Finally, in *State v. Urie*, 92 Idaho 71, 437 P.2d 24 (1968), the defendant was convicted of obtaining money by false pretenses in connection with a scheme to defraud an insurance company by concocting a story that one James F. Fraley had received serious injuries resulting in permanent paralysis from a fall into an elevator pit at a bean storage facility. The defendant made statements concerning Fraley's accidents and injuries to a representative of the insurance company and to counsel for the insurance company and the bean company, and on two later occasions voluntarily changed portions of his statement, making the purported liability of the bean company and its insurer appear more certain. After Fraley settled with the insurance company, and failed to pay the defendant his share of the settlement, the defendant contacted counsel for the bean company and made a statement setting out in detail that his entire prior story had been false for the purpose of obtaining money to be divided between Fraley and himself. The statement was reduced to writing and later signed by the defendant.

On appeal, the defendant argued that there was no evidence corroborating his extrajudicial statement that he had committed a crime. When addressing the issue, this Court first noted:

This court has frequently held that an extra-judicial confession, standing alone, is not sufficient to convict an accused in the absence of some corroborating circumstances. However, slight corroboration will suffice.

While the evidence adduced at the trial might not be sufficient, in the absence of appellant's extra-judicial confession, to sustain a conviction thereon, it is not neces-

sary to establish independently of the confession each element of the corpus delicti. 92 Idaho at 73, 437 P.2d at 26 (citations omitted). This Court then held that there was sufficient circumstantial evidence to corroborate the defendant's confession, pointing out two factors. First, the medical evidence at the defendant's trial showed that Fraley's left leg was not paralyzed, as he had alleged in his claim. Second, the defendant's course of conduct lent credibility to his statement. "[Defendant] twice changed portions of his story with the result that the purported liability of the bean company and its carrier was irrefutably established for all intents and purposes." 92 Idaho at 73, 437 P.2d at 27. This Court then added that Fraley and the defendant were longstanding friends and that "a crime of this particular nature would be difficult, if not well impossible, to prove with any degree of certainty in the absence of a confession on the part of one or both parties involved." *Id.*

In summary, since 1902 the law in Idaho has been that while an extrajudicial confession or admission, standing alone, is not sufficient to convict an accused, only slight corroborating facts are necessary to uphold the conviction. The corroborating evidence need not be sufficient to establish each element of the corpus delicti. *State v. Urie*, 92 Idaho 71, 437 P.2d 24 (1968). In a case involving the unlawful killing of a human being, the corpus delicti consists of two elements: (1) the death of the person named in the charge as dying or being dead, and (2) that the death was by the criminal action or means of the defendant. *State v. Cutler*, 94 Idaho 295, 486 P.2d 1008 (1971). In this case, Tiffany's extrajudicial statements that she had killed Nathan were corroborated by the facts that Nathan was dead, that he died while under the exclusive care of Tiffany, and that her statements about how she killed him were consistent with the autopsy results. The district court did not err in denying Tiffany's motion for a judgment of acquittal.

## B. Did the District Court Err in Refusing to Give Tiffany's Requested Instruction Regarding Mental Illness?

Tiffany based her mental illness defense upon the testimony of a Psychiatrist. In his opinion, Tiffany was suffering from what is commonly called postpartum depression at the time of Nathan's death. When asked whether, in his opinion, Tiffany was able to form the purpose to harm Nathan, the Psychiatrist answered, "My opinion, given what I know of that day and what I've been told about that day, would be that her ability to form that intent would have been extremely compromised." On cross-examination, he testified that a major depressive episode compromises one's ability to carry out day-to-day activities because "of the lack of energy, lack of interest, et cetera, that goes along with it." He stated that she was able to form the intent to care for Nathan when he needed care, such as feeding him and changing his diaper, and that she was able to understand the consequences of her actions, such as not making the bath water too hot. When asked whether he thought cutting off an infant's oxygen by placing a hand over his nose and mouth constituted abuse, the Psychiatrist responded:

I believe what I said at the previous hearing that I did not believe Michelle's doing it was considered abuse, that she considered it an abusive thing, because it was a practice which had occurred in the family. That she may have done it in a way that was different from what her mother did is true. I don't think she intended to abuse the child. It is an abusive thing in general to put your hand over a child's nose and mouth and to cut off oxygen, certainly it is.

On redirect, he answered, "No," to the question, "Do you believe that Michelle Tiffany had the purpose to abuse her baby on the day it died?"

The district court refused to give Tiffany's requested instruction regarding mental illness, which provided as follows:

For the defendant to be guilty of Involuntary Manslaughter or Injury to a Child the state must prove the defendant had a particular purpose. Evidence was offered that the defendant was suffering from mental illness at the time of the alleged offense. You should consider the defendant's mental condition in determining

whether the defendant had that required purpose.

If from all the evidence you have a reasonable doubt whether the defendant was capable of forming such purpose, you must find the defendant not guilty.

This instruction is a modified form of Idaho Criminal Jury Instruction (ICJI) 1506.[1]

 Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Varie*, 135 Idaho 848, 26 P.3d 31 (2001). Although a defendant is entitled to have his or her legal theory of the case submitted to the jury under proper instructions, the trial court does not err in refusing a proposed instruction where it is either erroneous in its statement of the law, is not supported by the evidence, constitutes an impermissible comment on the evidence, or is adequately covered by other instructions given by the court. *Id.*

The jury found Tiffany guilty of involuntary manslaughter by killing Nathan in the perpetration of an unlawful act, which was the crime of injury to a child. The felony crime of injury to a child, as defined in Idaho Code § 18–1501(1), can be committed in several ways:

Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully [a] causes or permits any child to suffer, or [b] inflicts thereon unjustifiable physical pain or mental suffering, or [2] having the care or custody of any child, [a] willfully causes or permits the person or health of such child to be injured, or [b] willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

(bracketed numbering added) The district court instructed the jury regarding the second manner of committing the crime. That portion of the statute does not require any intent or purpose to harm the child. Rather, it requires a knowledge or understanding of the consequences of one's volitional conduct.

In *State v. Young*, 138 Idaho 370, 373, 64 P.3d 296, 299 (2002), we addressed the meaning of the word "wilfully" as used in the first manner of committing the crime. We stated:

A plain reading of section 18–1501(1) indicates that its purpose is to punish conduct or inaction that intentionally causes a child to suffer. In this case application of the statute would require that the State prove that Young failed to take the child for medical treatment after the child was burned and that this failure was done with the knowledge that it would cause the child to suffer or would inflict unjustifiable physical pain or mental suffering. The purpose of the statute is not to punish mistakes in judgment that are reviewed in hindsight. If Young knew that failure to take the child for medical care would cause unnecessary suffering or unjustifiable physical pain, then he would be guilty. The question is not limited to the issue of whether he failed to obtain reasonable medical attention. Once established that the child should have received reasonable medical attention, there must be a further showing that the failure to obtain that medical attention was done with knowledge that this would cause unnecessary suffering or unjustifiable physical pain. Otherwise custodians of children may be subjected to criminal penalties for good faith decisions that turn out poorly—innocent mistakes in judgment.

We did not hold that for Young to be guilty he must have intended to cause his child unnecessary suffering or unjustifiable physical pain. We said that he would be guilty if

---

1. ICJI 1506 provides:

For the defendant to be guilty of [name of offense], the state must prove the defendant had a particular [state of mind] [purpose] [motive] [intent]. Evidence was offered that the defendant was suffering from a mental illness at the time of the alleged offense. You should consider the defendant's mental condition in determining whether the defendant had that required [state of mind] [purpose] [motive] [intent].

If from all the evidence you have a reasonable doubt whether the defendant was capable of forming such [state of mind] [purpose] [motive] [intent], you must find the defendant not guilty.

he "knew that failure to take the child for medical care would cause unnecessary suffering or unjustifiable physical pain." If he had that knowledge, it would not matter whether his intent was to cause harm to his child, or to prevent an investigation into his child's burns, or to avoid medical expenses.

In this case, the Psychiatrist testified that in his opinion, due to her postpartum depression, Tiffany's ability to form the purpose to harm Nathan would have been extremely compromised and that he did not believe she had the purpose to abuse Nathan on the day he died. He did not testify, however, that her depression would affect her ability to understand the consequences of her conduct. There was no evidence in this case that because of her depression, Tiffany did not understand that she was cutting off Nathan's oxygen supply when she placed her hand over his nose and mouth and that doing so would cause injury to his person or health. Her description of what occurred was that she placed her hand over Nathan's nose and mouth, and he passed out. There is no evidence that she did not understand that her conduct caused him to pass out. There is likewise no evidence that she did not understand the possible consequences of what could happen if she cut off his oxygen supply too long. She removed her hand, and he awakened about a minute later and began crying louder. She again placed her hand over his nose and mouth, and held it there until she noticed he was starting to turn blue. When she removed her hand, he was no longer breathing. Because the Psychiatrist's testimony did not address the mental element necessary for the crime of injury to a child, the district court did not err in failing to give the requested instruction.

■ The district court also instructed the jury that Tiffany could be guilty of involuntary manslaughter by killing Nathan while perpetrating the crime of battery. It instructed them that battery could be committed in either of two ways, one of which was when a person "unlawfully and intentionally causes bodily harm to an individual." The Psychiatrist's testimony would raise an issue of whether Tiffany had the state of mind required to commit a battery in that manner.

The district court instructed the jury: "Our law provides that mental illness is not a defense to any charge of criminal conduct. This means that mental illness, if the evidence shows such a condition to exist at the time the defendant committed the crime charged, is not of itself a defense in this case." This instruction is identical to ICJI 1505. Although the legislature has eliminated mental condition as a defense in criminal proceedings, IDAHO CODE § 18–207(1) (1997), expert evidence on the issue of any state of mind that is an element of the offense is admissible, subject to the rules of evidence, IDAHO CODE § 18–207(3) (1997). Where Tiffany's state of mind was an element of the offense of battery committed in one of the ways alleged, and there was expert testimony raising the issue of whether she had that state of mind, the district court erred in giving ICJI 1505 without also giving an appropriately-modified version of ICJI 1506. Without ICJI 1506, the jury could understand from ICJI 1505 that Tiffany's postpartum depression was irrelevant to deciding whether she unlawfully and intentionally caused bodily harm to Nathan. Such error was harmless, however. The jury found that Tiffany committed involuntary manslaughter both while committing the crime of injury to a child and while committing a battery. The verdict of guilty to involuntary manslaughter did not rest solely upon Tiffany having committed a battery; it rested upon the independent ground that she also committed injury to a child. Therefore, such error does not require reversal. *State v. Pratt*, 128 Idaho 207, 912 P.2d 94 (1996).

**C. Did the District Court Err in Refusing to Give Tiffany's Requested Jury Instructions on Corpus Delicti and Corroboration of Her Extrajudicial Statements?**

■ The district court refused to give two of Tiffany's requested jury instructions, which are as follows:

Defendant's Requested Instruction No. 17

Before a person may be found guilty of [a] crime, the State must first prove beyond a reasonable doubt that a crime has

actually occurred. The uncorroborated statement of a defendant, standing alone, is insufficient proof that a crime has occurred.

Therefore, before you may consider whether the defendant is guilty or not guilty of any crime, you must consider whether there is any evidence which corroborates the defendant's statement and tends to prove a crime occurred. Slight corroboration will suffice.

Defendant's Requested Instruction No. 18

Corroborative evidence is evidence of some act or fact related to the offense which, if believed, by itself and without any aid, interpretation or direction from the defendant's statement tends to prove a crime occurred.

However, it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged, or that it corroborate every fact within the defendant's statement.

In determining whether a defendant's statement has been corroborated, you must first assume the defendant's statement has been removed from the case. You must then determine whether there is any remaining evidence which tends to prove a crime occurred.

If there is not such independent evidence which tends to prove a crime occurred, the defendant's statement is not corroborated.

If there is such independent evidence, which you believe, then the defendant's statement is corroborated.

The district court did not err in refusing to give these two instructions. They would have required that the jury find that Nathan died from criminal means without considering Tiffany's statements. We have never required that the fact that a crime occurred must be proven independent of the defendant's extrajudicial statements.

**D. Did the District Court Err in Instructing the Jury Regarding the Crime of Injury to a Child?**

The district court instructed the jury that involuntary manslaughter "is the unlawful killing of a human being in the perpetration of an unlawful act" and that "Injury to a Child is an unlawful act." It then instructed the jury as follows:

"Injury to a Child" is committed when a person:

1. Has the care or custody of a child under 18 years of age,

2. under circumstances or conditions likely to produce great bodily harm or death of the child, and

3. the person wilfully caused or permitted the child's person or health to be injured or the child to be placed in a situation that endangered the child's person or health.

Tiffany first challenges the latter portion of the instruction containing the words "or the child to be placed in a situation that endangered the child's person or health." She contends that including these words in the instruction created a variance with the information. She is correct. The amended information alleged:

That the defendant, **MICHELLE LYNN TIFFANY,** on or about the 5th day of August, 1999, in the County of Kootenai, State of Idaho, did unlawfully, but without malice, kill N.D.T., a human being, in the perpetration of an unlawful act, to-wit: Michelle Lynn Tiffany twice covering the mouth and nose of her two month old baby, N.D.T., to the point of unconsciousness, all of which is contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the People of the State of Idaho.

There is no allegation in the information that Tiffany committed manslaughter by placing Nathan in a situation that endangered his person or health. When the criminal statute provides different ways of committing the crime, the jury instructions should be appropriately tailored to fit the allegations in the charging instrument. *State v. Tribe*, 123 Idaho 721, 731, 852 P.2d 87, 97 n. 5 (1993). Otherwise, there can be fatal variance between the instructions and the charging document. *State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1986). In this case, however, the

variance was not fatal. As Tiffany concedes in her brief, there was no evidence that she placed Nathan anywhere. Thus, the jury's verdict was not based upon that manner of committing the crime of injury to a child.

The district court also instructed the jury, "You are instructed that the word 'wilful' or the word 'wilfully,' as used in these instructions, means 'purposefully' or 'with knowledge of the consequences.' " Relying upon *State v. Young*, 138 Idaho 370, 64 P.3d 296 (2002), the court of appeals held that the giving of the instruction was reversible error, even though Tiffany had not raised that issue on appeal. On the petition for review of the opinion of the court of appeals, however, both parties briefed and argued the issue. We will therefore address it.

The word "willful" is defined as "done deliberately: not accidental or without purpose: intentional, self-determined (a ~ injury) (~ murder) (~ distortion of the facts) (alleged ~ failure to register)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2617 (Philip Babcock Gove, ed., 1971). The word "purposeful" is defined as "full of determination: guided by a definite aim (he was a ~ man)" *Id.* at 1847. Tiffany has not argued that substituting the word "purposefully" for the word "wilfully" would diminish the State's burden of proof under Idaho Code § 18–1501(1), and we fail to see how it would.

The district court also defined "wilfully" to mean "with knowledge of the consequences." Substituting that phrase for the word "wilfully," the jury would have been instructed that the State must prove that Tiffany caused or permitted Nathan's person or health to be injured with knowledge of the consequences. Such instruction was not inconsistent with *State v. Young*, 138 Idaho 370, 64 P.3d 296 (2002).

At the time of the trial of this case, the district court did not have the benefit of our opinion in *State v. Young*. Although we hold that the district court did not err in its definition of wilfully, we reiterate, "Read by itself section 18–1501(1) leads a jury to the proper analysis. . . . [I]t should have been instructed as written." 138 Idaho at 373, 64 P.3d at 299. When instructing the jury, trial courts should not attempt to define the word "wilfully" in that statute.

### E. Did the District Court Err in Refusing to Give Tiffany's Jury Instruction on Proximate Cause?

The district court instructed the jury that in order for Tiffany to be guilty of involuntary manslaughter, the State must prove beyond a reasonable doubt that "the defendant Michelle Lynn Tiffany perpetrated an unlawful act, and in the commission of the unlawful act, the defendant produced the death of N.D.T." The district court refused to give Tiffany's requested jury instruction on proximate cause, which provided:

> In order for the defendant to be guilty of Involuntary Manslaughter through perpetration of an unlawful act, the state must prove beyond a reasonable doubt that the defendant's act was the proximate cause of the death of Nathan Tiffany.

> A proximate cause is one from which the death of a human being was the ordinary and natural result and might reasonably have been expected to result from such a cause.

Tiffany contends Nathan's death could have been caused by her attempt to administer cardiopulmonary resuscitation to him and that it was therefore error not to give her proximate cause instruction.

Tiffany bases this argument upon the testimony of the Pathologist, who stated that while attempting to strangle someone, the strangler could also inadvertently apply pressure to the side of the victim's neck in the same manner as the carotid sleeper hold, causing unconsciousness within a few seconds and irreversible damage in less than a minute. On cross-examination he was asked whether someone tilting Nathan's chin back while covering his mouth and nose and blowing into it would reduce the amount of time it takes the child to lose consciousness. He answered that extension of the neck would probably have no effect whatsoever. He added that there must be pressure on the sides of the neck, where the nerves, arteries, and veins are, or on the Adam's apple, pushing it up and thereby forcing the base of the

tongue and the larynx upward. He was then asked, "But if there is, if say the infant CPR is done not quite expertly and you get a little bit of pressure there when you are covering the mouth and nose and blowing, that would greatly reduce the time?" He responded that he did not understand the question, and there was no further questioning on that issue. Tiffany did not testify as to the manner in which she administered CPR to Nathan, and there was simply no evidence that she could have accidentally caused Nathan's death while administering CPR.

## F. Did the District Court Err in Refusing to Give Tiffany's Requested Jury Instructions on Excusable Homicide and Misfortune or Accident?

■ The district court refused to give Tiffany's requested instruction on excusable homicide, which provided as follows:

The Information charges the defendant with the offense of Involuntary Manslaughter. Involuntary Manslaughter is a form of homicide or the unlawful killing of a human being without justification or excuse.

The defendant, Michelle Tiffany, contends as a defense in this case that the killing of the decedent was an excusable homicide. Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent.

The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was not excusable. If there is a reasonable doubt whether the homicide was excusable, you must find the defendant not guilty.

This instruction is based upon Idaho Code § 18–4012. Tiffany argues that this instruction was supported by testimony from others that she would never have purposefully injured Nathan and her extrajudicial statements that she placed her hand over his nose and mouth to quiet him.

Although Tiffany was entitled to have the jury instructed on her theory of the case, an instruction need not be given unless there is supportive evidence for that theory. *State v.*

*Varie*, 135 Idaho 848, 26 P.3d 31 (2001). The evidence was uncontradicted that Tiffany intentionally placed her hand over Nathan's nose and mouth to cut off his oxygen to the point that he would be rendered unconscious in an attempt to stop his crying. There is no evidence that she did not understand that she was cutting off his supply of oxygen. By Tiffany's statements, Nathan was rendered unconscious the first time she did it, and he then resumed crying after regaining consciousness. She again placed her hand over his nose and mouth and held it there until he turned blue. At that point he was dead. Although she may not have intended to kill Nathan, her intentional smothering him to unconsciousness in that situation, which caused his death, was not an "accident or misfortune in doing any lawful act by lawful means, with usual and ordinary caution." The district court did not err in refusing to give that instruction.

■ The district court also refused to give Tiffany's requested instruction based upon Idaho Code § 18–201(3), which provides, "All persons are capable of committing crimes, except ... [p]ersons who committed the act or made the omission charged, through misfortune or by accident, when it appears that there was not evil design, intention or culpable negligence." Her requested instruction provided: "All persons are capable of committing crimes, except those belonging to the following class: Persons who committed the act or made the omission charged through misfortune or by accident when it appears there was not evil design or intention." As discussed above, there was a lack of evidence supporting an instruction that Tiffany "committed the act ... charged through misfortune or by accident." In addition, this requested instruction was not a correct statement of the law because it omitted the reference to "culpable negligence." The district court did not err in refusing to give it.

Tiffany also raises issues regarding the district court's instructions on the crime of battery. Because her conviction of involuntary manslaughter is based upon the independent ground that she unlawfully killed

Nathan in the perpetration of the crime of injury to a child, we need not discuss those issues.

## IV. CONCLUSION

We affirm Tiffany's judgment of conviction.

Chief Justice TROUT, and Justices SCHROEDER, KIDWELL and BURDICK concur.