# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39258

STATE OF IDAHO,

       Plaintiff-Respondent,

v.

TODD JAMES SURINER,

       Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2012 Term

2013 Opinion No. 5

Filed: January 23, 2013

Stephen W. Kenyon, Clerk

SUBSTITUTE OPINION.
THE COURT'S PRIOR
OPINION FILED ON
NOVEMBER 15, 2012 IS
HEREBY WITHDRAWN.

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Deborah A. Bail, District Judge.

The judgment of the district court is affirmed.

Diane M. Walker, Deputy State Appellate Public Defender, Boise, argued for appellant.

Mark W. Olson, Deputy Attorney General, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Ada County contending that there was not sufficient evidence corroborating the defendant's confession to support his conviction for sexually abusing his two young daughters. We hold that the corroboration was sufficient and affirm the judgment of conviction. We also overrule our prior decisions adopting the *corpus delicti* rule.

## I.

### Factual Background.

Todd Suriner (Defendant) is the father of twin girls who, in December 2008, were about three and one-half years of age. One of the daughters mentioned to her aunt that the Defendant had hurt her "business," which is the word she had been taught to use when referring to her vagina. Law enforcement was contacted, and on December 18, 2008, a detective telephoned the Defendant and asked to meet with him. He went to the detective's office, denied any wrongdoing, and agreed to submit to a polygraph.

After arriving at the sheriff's office for the polygraph, but before it was administered, the Defendant admitted that for the past year he had been sexually abusing his daughters by inserting his finger into their vaginas and then masturbating. He stated that he abused them on Sundays while his wife was at work. The Defendant confessed to sexually abusing them during two separate interviews with detectives that were held five days apart.

On December 30, 2008, the Defendant was charged with two counts of lewd conduct in violation of Idaho Code section 18-1508 (one count for each daughter). He pled not guilty and was tried before a jury. During the trial, the State offered into evidence the Defendant's videotaped confessions and audiotapes of remorseful telephone calls he had made from jail. The State also presented the testimony of a pediatrician who had conducted a physical examination of the girls. His examination did not reveal any trauma or injury that is associated with sexual abuse, but he testified that the lack of such physical evidence is not unusual and that from 66% to 95% of children who are seen for allegations of sexual abuse and penetration will have a normal exam. The State also called the Defendant's wife as a witness, and she testified that he was alone with the girls on Sundays while she was at work.

After the State rested, the Defendant moved for a judgment of acquittal based upon the *corpus delicti* rule on the ground that the State had not produced evidence that a crime had occurred independently from the Defendant's confession. The district court denied the motion, and the Defendant declined to testify or offer any evidence. The jury returned a verdict finding the Defendant guilty of both counts of lewd conduct. The court later sentenced the Defendant on both counts to twenty-five years in the custody of the Idaho Board of Correction, with five years determinate and the remaining twenty years indeterminate, with the sentences to be concurrent. The court retained jurisdiction for 180 days, but later declined to place the Defendant on probation and remanded him into the custody of the Board of Correction to serve his sentence. The Defendant timely appealed.

The appeal was initially heard by the Idaho Court of Appeals, which reversed the conviction on the ground that there was no evidence corroborating the Defendant's confessions as required by the *corpus delicti* rule. The State filed a petition for review, which we granted. In cases that come before this Court on a petition for review of a Court of Appeals decision, we directly review the decision of the lower court as if the appeal came directly to this Court. *Head v. State*, 137 Idaho 1, 2, 43 P.3d 760, 761 (2002).

## II.

## Did the District Court Err in Holding that
## There Was Sufficient Corroboration Under the *Corpus Delicti* Rule?

The *corpus delicti* rule is "the fact that a crime has been committed cannot be proved by the extrajudicial confessions or statements of the prisoner, and that there must be some evidence or corroborating circumstances tending to show that a crime has been committed, aside from such confessions or statements." *State v. Keller*, 8 Idaho 699, 704, 70 P. 1051, 1052 (1902). There was no common-law *corpus delicti* rule in England. "There the courts have been hesitant to lay down a rule that an uncorroborated extrajudicial confession may not send an accused to prison or to death," *Opper v. U.S.*, 348 U.S. 84, 89 (1954), although there were statutes that prohibited a conviction for specific crimes on the uncorroborated extrajudicial confession of a defendant, *See* 4 William Blackstone, Commentaries 357 (21st ed. 1844).

In adopting a *corpus delicti* rule, the courts in this country have not been uniform in applying the rule. Because the rule is court created, each jurisdiction has determined what can constitute the necessary corroboration. Some have required independent evidence of each element of the crime, while others have required much less corroboration. *See Opper*, 348 U.S. at 92-93, (wherein the Supreme Court reviewed the various ways in which federal courts had applied the corroboration requirement); 29A Am. Jur. 2d Evidence § 777 (2008) (discussing varying applications of the rule).

In denying the motion for a judgment of acquittal, the district court held that there was sufficient evidence corroborating the Defendant's confession under the *corpus delicti* rule adopted in Idaho. The court relied upon (a) the fact that the Defendant confessed twice, several days apart; (b) the confessions were videotaped, allowing the jury to assess whether there were any pressures that might cause a false confession; (c) the Defendant initiated telephone calls

3

from the jail in which he made incriminating statements; and (d) the pediatrician's examination of the girls could not rule out sexual abuse. The issue is whether the district court's application of the rule is consistent with our prior opinions. We hold that it is.

In 1902, this Court adopted the *corpus delicti* rule in *State v. Keller*. The defendant had been convicted of violating a quarantine by bringing sheep through Box Elder County, Utah, into Idaho. 8 Idaho at 703, 70 P. at 1051. The evidence produced by the State in its case-in-chief consisted of the Governor's quarantine proclamation and the testimony of one witness. *Id*. at 703-04, 70 P. at 1052. On March 19, 1901, the Governor of Idaho had issued a proclamation pursuant to Idaho's quarantine laws prohibiting the bringing of any sheep into Idaho for a period of forty days from or through certain specified areas including Box Elder County. *Id*. at 703, 70 P. at 1052. The witness testified that on April 12, 1901, he went with the defendant to his sheep camp in Oneida County, Idaho, where there was a band of the defendant's sheep containing about 2,000 head and the defendant stated that two or three days earlier he had driven the sheep into Idaho through Box Elder County. *Id*. at 703-04, 70 P. at 1052. At the close of the State's case, the defendant asked the trial court to instruct the jury to return a verdict for the defendant on the ground that there was insufficient evidence corroborating his out-of-court statement, which the court refused to do. *Id*. at 704, 70 P. at 1052. This Court affirmed the trial court's denial of the motion. We held that only slight corroborating facts were required and that there was sufficient corroboration, which we described as follows:

> We think the above evidence sufficiently corroborates the statement of the defendant that said sheep had been brought by him from Box Elder county, Utah, subsequent to the date of the governor's proclamation, and prior to the twelfth day of April, 1901. The witness saw the sheep in Oneida county. Defendant claimed to own them, and stated that he had wintered them on the desert, and had brought them through Box Elder county, Utah, into Idaho, two or three days prior to the 12th of that month.

*Id*.

The only evidence corroborating the defendant's out-of-court statement was the witness's testimony that on April 12, 1901, he was at the defendant's sheep camp in Oneida County, Idaho, where the defendant had about 2,000 head of sheep. Although the defendant having the sheep in Idaho was a fact that the State was required to prove, it was not a crime for the defendant to have had sheep in Idaho on that date. It was only a crime to have brought them through Box Elder

4

County within forty days after the Governor's proclamation. The witness's observation of the sheep in Idaho would not in any way corroborate the truthfulness of the defendant's statement that he had brought those sheep through Box Elder County within the last two or three days. Thus, there was no corroboration of that portion of the defendant's statement that made having the sheep in Idaho criminal, which was bringing them into Idaho through Box Elder County after the Governor's proclamation. Nevertheless, this Court held that the corroboration was sufficient.

In *State v. Urie*, 92 Idaho 71, 437 P.2d 24 (1968), the defendant conspired with a man named Fraley to obtain money from an insurance company for serious injuries that Fraley had allegedly suffered, including alleged paralysis of his left leg, when he fell into an elevator pit on the premises of the defendant's employer. *Id*. at 72, 437 P.2d at 25. The defendant made statements to the insurance company supporting Fraley's claim, and the company ultimately settled the claim by paying Fraley $25,000. *Id*. When the defendant did not receive his promised share of the settlement, he went to his employer's counsel and confessed the scheme. *Id*. The defendant's statement was reduced to writing, and, about three months later, he again went to that attorney where he signed the statement and reiterated the scheme with two representatives of the insurance company being present. *Id*. at 72-73, 437 P.2d at 25-26.

Fraley was charged with obtaining money under false pretenses, but the charge was dismissed largely because the defendant refused to testify. *Id*. at 73, 437 P.2d at 26. The defendant was also charged and convicted of obtaining money under false pretenses and was convicted. He appealed contending, among other things, that there was insufficient corroboration of his extrajudicial confessions. *Id*. This Court held that there was sufficient corroborating evidence, and, in listing such evidence, we included the defendant's two confessions. We stated:

> This court finds from its reading of the entire record that there is enough circumstantial evidence to corroborate appellant's confession and establish the commission of the alleged crime. The medical testimony leaves no doubt that Fraley was not paralyzed as he had claimed. The basis of Fraley's suit against the insurance company, for which he received $25,000 in settlement, was the fact that as a result of this alleged accident Fraley 'sustained painful injuries to his back, spinal column, and legs, of such nature and severity that he has permanently lost the use of his left leg and is permanently crippled.' (State's Exhibit A) Furthermore, appellant's course of conduct from the time of the alleged injury to the signing of the confession lends credibility to his statement. Appellant twice changed portions of his story with the result that the purported liability of the bean company and its carrier was irrefutably established for all intents and purposes.

5

> *Thereafter, he voluntarily made statements admitting the fraudulent scheme before counsel for the bean company which he subsequently reiterated with further particularity and exactitude before two other agents of the insurance company at the time he signed his 'confession.'*

*Id.* at 73-74, 437 P.2d at 26-27 (emphasis added). We then added that "a crime of this particular nature would be difficult, if not well impossible, to prove with any degree of certainty in the absence of a confession on the part of one or both parties involved." *Id.* at 74, 437 P.2d at 27. Justice McFadden wrote a concurring opinion, in which Chief Justice Taylor joined, stating that corroboration of an extrajudicial confession should not be required in this type of case. *Id.* at 75, 437 P.2d at 28 (McFadden, J., specially concurring).

In applying the rule, this Court in *Urie* stated, "Furthermore, appellant's course of conduct from the time of the alleged injury to the signing of the confession lends credibility to his statement." The course of conduct listed by the Court as lending credibility to the appellant's signed confession included that "he voluntarily made statements admitting the fraudulent scheme before counsel for the bean company which he subsequently reiterated with further particularity and exactitude before two other agents of the insurance company at the time he signed his 'confession.' " Thus, this Court stated that extrajudicial statements that were consistent with the signed confession could be used to corroborate that confession.

Although it may seem inconsistent with the *corpus delicti* rule to permit a defendant's extrajudicial statements to corroborate his extrajudicial confession, the rule is court created. Each court has defined and applied the rule as the court deemed best. As will be discussed below, the rule as adopted and applied by this Court has not been designed to protect any constitutional or statutory rights or even to prevent convictions based upon false confessions.

The last case in which we have addressed the *corpus delicti* rule is *State v. Tiffany*, 139 Idaho 909, 88 P.3d 728 (2004). In that case, the defendant's two-month-old son died while he was allegedly taking a nap. *Id.* at 911, 88 P.3d at 730. An autopsy performed the next day did not reveal any cause of death, so the pathologist listed the cause of death as sudden infant death syndrome. *Id.* About eleven months later, the defendant admitted to her husband that she had smothered their son in an attempt to stop his crying. *Id.* She and her husband decided to seek marital counseling, and she admitted killing their son to the counselor. *Id.* The counselor contacted the police, and two officers came to the counselor's office where defendant admitted to

6

them that she had smothered the boy. *Id.* They arrested her, and the following day she admitted the killing to a detective. *Id.* She was charged and convicted of involuntary manslaughter. *Id.* at 911-12, 88 P.3d at 730-31. On her appeal, she contended that there was insufficient evidence corroborating her out-of-court confessions. We noted that only slight corroborating facts were necessary, and held that there was sufficient corroboration in that case, stating:

> In a case involving the unlawful killing of a human being, the corpus delicti consists of two elements: (1) the death of the person named in the charge as dying or being dead, and (2) that the death was by the criminal action or means of the defendant. In this case, Tiffany's extrajudicial statements that she had killed [infant] were corroborated by the facts that [infant] was dead, that he died while under the exclusive care of Tiffany, and that her statements about how she killed him were consistent with the autopsy results. The district court did not err in denying Tiffany's motion for a judgment of acquittal.

*Id.* at 915, 88 P.3d at 734 (citation omitted).

The corroborating evidence showed that the infant died while in the defendant's exclusive custody and that the autopsy did not rule out that she had killed him by smothering him. There was no corroboration of the element of the crime that the child's death was caused by criminal means. Without bruising or other signs of trauma, the pathologist could not tell whether the infant died from being smothered or from sudden infant death syndrome.

Thus, in *Urie* this Court held that corroboration can include the defendant's other extrajudicial statements, and in *Tiffany* this court held that corroboration could include the results of a medical exam of the victim that was consistent with the defendant's extrajudicial statement. Under those decisions, the district court did not err in holding that there was sufficient corroboration in this case.

### III.

**Did the District Court Err in Instructing the Jury Regarding *Corpus Delicti*?**

The district court instructed the jury regarding *corpus delicti* as follows:

> The guilt of the defendant may not be established solely by a confession made by him outside of the courtroom in the absence of some corroborating circumstances. It is not necessary that every element of the offense be established by evidence outside of the defendant's confession but there must at least be slight corroborating evidence of the facts of a defendant's confession to support a conviction. The law does not require that the fact that a crime occurred be proven independently of a defendant's confession.

7

The purpose of this rule is to prevent errors in convictions based on false confessions, to act as a safeguard against the defendant's act of confessing but being mistaken that a crime occurred, to prevent false confessions from mentally ill persons, to safeguard against coerced confessions and to force the prosecution to use its best evidence.

Defendant argues that this instruction was in error because: (a) "The district court only required slight corroboration of the confession not slight evidence that a crime took place"; (b) "[I]t allowed the State to prove the *corpus delicti* from the extrajudicial statements of Mr. Suriner"; and "Under the court's instruction, Mr. Suriner's statements may prove the elements of the crime, even if no evidence of a crime exists, so long as the jury is convinced the confessions are not false." As we stated above, the *corpus delicti* rule as adopted in Idaho required slight corroboration of the defendant's out-of-court confession and that such corroboration could come from a defendant's subsequent out-of-court statements that were consistent with the confession. Defendant has not shown that the district court erred in giving the above instruction.

## IV.

### Should the *Corpus Delicti* Rule Be Abandoned?

The State presented the alternative argument on appeal that we should abandon the *corpus delicti* rule. Both parties have briefed and argued that issue. We agree that the rule should be abandoned.

The Defendant argues that only the legislature can abandon the rule. He argues that in 1864 the Idaho Territorial Legislature enacted a statute adopting the common law of England; that Article XXI, § 2, of the Idaho Constitution states that "[a]ll laws now in force in the territory of Idaho which are not repugnant to this Constitution shall remain in force until they expire by their own limitation or be altered or repealed by the legislature"; and that Idaho Code section 73-116 states, "The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state." As stated above, the *corpus delicti* rule was not part of the common law of England. Therefore, the *corpus delicti* rule was not adopted by either our Constitution or by legislation.

When this Court adopted the *corpus delicti* rule, it did not give a rationale for doing so. The avowed major purpose of the rule is "the prevention of errors in conviction based upon

untrue confessions alone." 29 Am. Jur. 2d *Evidence* § 765 (2008). As applied by this Court, the rule does not protect against convictions based upon untrue, extrajudicial confessions. We have never required that there be corroborating evidence of that part of the confession that establishes the illegality of the conduct. The rule as adopted by this Court only requires that there be slight corroboration, which could include an element of the crime that, in itself, is not criminal.

As explained above, in *Keller* there was no corroboration of that portion of the defendant's statement that made having the sheep in Idaho criminal, which was bringing them into Idaho through Box Elder County after the Governor's proclamation. The defendant's statement that he had brought the sheep through Box Elder County could have been false or mistaken. The witness had no knowledge of that fact, nor was there other evidence showing that the defendant had done so. Likewise, in *Tiffany* there was no corroboration of the element of the crime that the child's death was caused by criminal means. Without bruising or other signs of trauma, the pathologist could not tell whether the infant died from being smothered or from sudden infant death syndrome. Thus, the corroborating evidence would not have shown the truthfulness of the defendant's statement that she had smothered him. He could have died from sudden infant death syndrome, and she could have mistakenly believed that it was from her efforts to prevent him from crying. Thus, as applied by this Court the *corpus delicti* rule does not prevent an innocent defendant from being convicted based upon the defendant's false or inaccurate extrajudicial confession.

An innocent defendant could be convicted not only upon his false, extrajudicial confession, but also upon the false testimony of his accuser. There are many crimes in which the only evidence against the defendant may be the accuser's testimony. In such cases, we do not require that there be corroboration of the accuser's testimony,[1] although from 1899 to 1981 this Court did require that a conviction of a sex crime could not be based upon the uncorroborated testimony of the accuser.[2] In 1981, we ultimately recognized the fallacy of that court-created

---

[1] By statute, the testimony of an accomplice must be corroborated. I.C. § 19-2117.

[2] In *State v. Anderson*, 6 Idaho 706, 59 P. 180 (1899), the Court held:

> Undoubtedly the rule is that a defendant may be convicted of the crime of rape upon the uncorroborated testimony of the prosecutrix; but this is only so when the character of the prosecutrix for chastity, as well as for truth, is unimpeached, and where the circumstances surrounding the commission of the offense are clearly corroborative of the statements of the prosecutrix.

rule and abandoned it. After reviewing and rejecting the asserted rationales for the rule, we held that "the requirement of corroboration in sex crime cases is no longer the law in Idaho." *State v. Byers*, 102 Idaho 159, 165, 627 P.2d 788, 794 (1981). There is no logical reason why we should create a rule to protect against the possibility that the defendant falsely confessed to the crime any more than we should craft a rule to protect against the possibility that the defendant's accuser fabricated the charge or is mistaken (e.g., has incorrectly identified the defendant as the wrongdoer).

The *corpus delicti* rule does not protect any statutory or constitutional rights. Although some argue that one rationale supporting the rule is that confessions may be unreliable because they have been coerced or induced, *Smith v. United States*, 348 U.S. 147, 153 (1954), the rule was not adopted in Idaho for that purpose because in *Keller* the defendant's confession was voluntarily made to a friend at the defendant's sheep camp. When he made the statement, he was not in law enforcement custody, he was not being subjected to any questioning, and there is no indication that there was anything that induced him to make the statement.

Since this Court adopted the rule of *corpus delicti*, there have been significant developments in the law designed to protect against coerced confessions. The United States Supreme Court has created *Miranda* rights to guard against the danger of coercion that may result from custodial interrogation. In addition, illegal coercion does not require torture or physical abuse. "If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure . . . ." *Townsend v. Sain*, 372 U.S. 293, 307 (1963) (footnotes omitted). We believe that the adversary process provides a better mechanism for protecting against the consequences of coerced confessions than does the court-created *corpus delicti* rule. As discussed above, that rule as applied in Idaho does not necessarily protect against false confessions or admissions. A defendant who contends that he was coerced into making a false or

---

*Id*. at 709-10, 59 P. at 181. The asserted reason for the rule was that the crime of rape "is 'an accusation easy to make, and hard to be proved, and harder still to be defended by the party accused.' " *Id*. at 710, 59 P. at 181. The Court later held that even where the prosecutrix is chaste and there is no attempt to impeach her reputation for truth, "the circumstances surrounding the commission of the offense [must be] clearly corroborative of the statements of the prosecutrix." *State v. Hines*, 43 Idaho 713, 718, 254 P. 217, 218 (1927).

inaccurate statement can seek to have it excluded from evidence. If it is admitted, he can present evidence to show the circumstances under which it was made and to explain why it should not be believed or relied upon. We also note that the *corpus delicti* rule does not protect those who falsely confess and then plead guilty.

"While we are cognizant of the importance *stare decisis* plays in the judicial process, we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case has proven over time to be unjust or unwise." *State v. Maidwell*, 137 Idaho 424, 426, 50 P.3d 439, 441 (2002). When this Court adopted the *corpus delicti* rule, it did not give any rationale for doing so. It simply accepted the rule and then limited its application to the greatest extent possible. The rule as applied does not protect against false confessions, but even its limited application can be an impediment to convicting the guilty. Because the harm caused by the rule exceeds whatever benefits there may be, we hold that the *corpus delicti* rule no longer applies in Idaho. We see no reason to attempt to fashion another rule to take its place. Instead, the jury can give a defendant's extrajudicial confession or statement whatever weight it deems appropriate along with all of the other evidence when deciding whether the State has proved guilt beyond a reasonable doubt.

## V.
### Conclusion.

We affirm the judgment of the district court.

Chief Justice BURDICK and Justices J. JONES, W. JONES and HORTON **CONCUR**.

11